IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RICCA PRASAD, | : | |
| *Plaintiff,* | : | |
| | : | No. 1:15-cv-1779 |
| v. | : | Judge Amy Berman Jackson |
| | : | |
| THE GEORGE WASHINGTON | : | |
| UNIVERSITY, | : | |
| *Defendant.* | : | |
| | : | |

**DEFENDANT THE GEORGE WASHINGTON UNIVERSITY'S
PARTIAL MOTION TO DISMISS**

Defendant the George Washington University respectfully moves for an Order dismissing

the Second, Third, Fourth, and Fifth Causes of Action of the Complaint filed by plaintiff Ricca

Prasad. The grounds for this motion are set forth in the accompanying memorandum of points

and authorities, which is incorporated by reference.   A proposed Order is attached to this

motion.[1]  The University respectfully requests oral argument on this motion if the Court believes

oral argument would be helpful.

Respectfully submitted,

*/s/ William D. Nussbaum*
William D. Nussbaum (DC Bar # 941815)
wnussbaum@saul.com
Dated: December 3, 2015     Saul Ewing LLP
1919 Pennsylvania Ave., NW, Suite 550
Washington, DC 20006
(202) 295-6652 telephone
(202) 295-6715 facsimile
*Counsel for Defendant*
*The George Washington University*

---

[1]  Because it is filing a partial motion to dismiss, the University is not filing an Answer to any claims in the Complaint at this time.  See Betz v. First Credit Servs., Inc., No. CV 15-01376 (RC), 2015 WL 6083512, at *4 n. 4 (D.D.C. October 15, 2015).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | : | |
| RICCA PRASAD, | : | |
| *Plaintiff,* | : | |
| | : | No. 1:15-cv-1779 |
| v. | : | Judge Amy Berman Jackson |
| | : | |
| THE GEORGE WASHINGTON | : | |
| UNIVERSITY, | : | |
| *Defendant.* | : | |
| | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT THE GEORGE WASHINGTON
UNIVERSITY'S PARTIAL MOTION TO DISMISS**

Defendant the George Washington University ("GW" or "the University") respectfully

files this memorandum in support of its partial motion to dismiss plaintiff Ricca Prasad's

Second, Third, Fourth, and Fifth causes of action, and in support of its motion states as follows:

**STATEMENT OF ALLEGED FACTS**

According to the Complaint, Ms. Prasad was enrolled at the University from September

2010 to May 2015.[2]   Compl. ¶ 8.   She began dating "VT," a fellow undergraduate student, in

February 2011 when she was a freshman.[3]   Compl. ¶ 9.   Ms. Prasad broke up with VT in January

2012.   Compl. ¶ 11.   In that same month, Ms. Prasad filed an incident report with the

University's police department ("GWPD") alleging that VT was harassing her.   Compl. ¶¶ 13.

The University issued a No-Contact Order between VT and Ms. Prasad in January 2012.   Compl.

---

[2]   This motion is based on the allegations in the Complaint, without prejudice to GW.  *See* <u>Whiting v. AARP</u>, 701 F. Supp. 2d 21, 25 (D.D.C. 2010) (allegations assumed to be true in deciding motion to dismiss).

[3]   Because Ms. Prasad has identified this individual as "VT" in her Complaint, the University will do the same in this memorandum.

¶¶ 22.  The No-Contact Order remained in place for over a year, terminating in January 2013 when Ms. Prasad asked that it be rescinded.  Compl. ¶ 25.

After the No-Contact Order was rescinded at Ms. Prasad's request, Ms. Prasad did not contact the University about VT for approximately three months.  On April 1, 2013, Ms. Prasad reported to GWPD that she had voluntarily met VT at a local park the day before and he assaulted her.   Compl. ¶¶ 28-33.   As a result of Ms. Prasad's report, that same day, the University issued a second No-Contact Order.  Compl. ¶ 34.

The University had additional meetings with Ms. Prasad after the second No-Contact Order was issued, and the University initiated disciplinary proceedings against VT in May 2013. Compl. ¶¶ 37, 57, 62.  Although Ms. Prasad claims that she was not pleased with how the Director of the University's Office of Student Rights and Responsibilities handled the matter, those disciplinary proceedings ended with the University suspending VT for 2 years, or until May 2015 --  which would coincide with the completion of Ms. Prasad's graduate studies at the University.[4]  Compl. ¶¶ 40, 62.

Ms. Prasad claims that VT continued to send her harassing emails after his suspension by the University and despite the second No-Contact Order.  Compl. ¶¶ 66-67.  In August 2013, after she returned to campus to begin her graduate studies, Ms. Prasad filed a petition for a Civil Protection Order against VT in the Superior Court of the District of Columbia.  Compl.  ¶ 71. The court granted Ms. Prasad a Temporary Protection Order ("TPO") on September 30, 2013, which was the first step toward obtaining a Civil Protection Order.  Compl. ¶ 72.  Ms. Prasad does not believe that VT ever violated the TPO.  Compl. ¶ 73.

---

[4]     After receiving her undergraduate degree in May 2013, Ms. Prasad returned to the University in August 2013 to begin graduate studies.  Compl. ¶ 70.

Despite the apparent effectiveness of the TPO, Ms. Prasad elected to withdraw her petition for a Civil Protection Order.  Compl. ¶ 76.  Ms. Prasad alleges that almost immediately after she withdrew the petition, VT began to harass her by phone, email and social media.  Compl. ¶¶ 76-78.

Ms. Prasad did not file another petition for a Civil Protection Order against VT until March 2015, almost eighteen months later, and more than a year after she claims that she was diagnosed with PTSD.  Compl. ¶¶ 83, 100-101.  She contends that VT violated the second No-Contact Order in the interim, and failed to comply with a contract between the University and VT requiring VT to meet certain conditions (e.g., complying with University policies and the No-Contact Order) in order to receive his degree.[5]  Compl. ¶¶ 74-75, 95.  Ms. Prasad concedes that VT has never violated the March 2015 Civil Protection Order.  Compl. ¶¶ 77, 100-101.

## LEGAL STANDARD

A claim should be dismissed under Rule 12(b)(6) when it appears that the plaintiff will be unable to prove any set of facts entitling her to relief.  *See* Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  If the plaintiff cannot prevail on the claim, it should be dismissed "at the point of minimum expenditure of time and money by the parties and the court."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 558 (2007) (citation and quotations omitted).

A claim should also be dismissed when a plaintiff fails to plead facts sufficient to support it.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. at 678 (quoting

---

[5]   In the interim, VT received his undergraduate degree with a retroactive effective date of May 2013.  Compl. ¶ 97.

Twombly, 550 U.S. at 570).  A claim is not facially plausible unless the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  A complaint that tenders "'naked assertion[s]' devoid of 'further factual enhancement'" fails to meet the plausibility standard or provide grounds for relief.  Id. at 678; see also Twombly, 550 U.S. at 555.

## ARGUMENT

### I.     The Second Cause of Action (Breach of a Third-Party Beneficiary Contract) Must be Dismissed

Although the University disputes that Ms. Prasad was a third-party beneficiary of the contract referenced in paragraph 75 of the Complaint, the Court need not resolve that dispute in considering whether to dismiss the Second Cause of Action.  The reason is this: the crux of the Second Cause of Action is that the University awarded VT a degree despite *his* failure to comply with the alleged contract between VT and the University, namely by violating the No-Contact Order.  Compl. ¶ 119.  Even if this were true, Ms. Prasad has not alleged a breach by *the University*.  What she has alleged is a breach by *VT*, and a decision by the University not to enforce *its* rights under the contract in response to that breach.  That does not give Ms. Prasad a viable breach of contract claim against the University.

Under District of Columbia law, "declining to enforce a contract right does not constitute a breach."  Corp. Sys. Res. v. Washington Metro. Area Transit Auth., 31 F. Supp. 3d 124, 134 (D.D.C. 2014) ("[t]he most that could be said here is that Defendant WMATA 'failed to enforce a contract provision that it was entitled to enforce'" but "[d]eclining to enforce a contract right does not constitute a breach by Defendant WMATA of any contract.") (Howell, J.) (quoting Sullivan v. United States, 625 F.3d 1378, 1387 (Fed. Cir. 2010)).  Rather, because a promise in a contract creates a duty on the part of the *promisor* (not the promisee), a third-party beneficiary's

action lies against the promisor only, who in this case would be VT. <u>See</u> <u>Bituminous Coal Operators' Ass'n, Inc. v. Connors</u>, 867 F.2d 625, 632 (D.C. Cir. 1989) ("a third party beneficiary that brings a contract claim steps into the shoes of the promisee"); <u>see also</u> <u>D.C. v. Campbell</u>, 580 A.2d 1295, 1302 (D.C. 1990) (citing Restatement (Second) of Contracts § 304 (1981) ("[a] promise in a contract creates a duty *in the promisor* to any intended beneficiary to perform the promise") (emphasis added).

This Court has also explicitly held that an intended third-party beneficiary *cannot* sue the promisee for the promisor's breach of contract. <u>See</u> <u>John D. Neumann Properties, Inc. v. Washington Metro. Area Transit Auth</u>., No. CIV. A. 86-2013, 1988 WL 9582, at *6 (D.D.C. Jan. 29, 1988). In <u>Neumann</u>, the plaintiff asserted that it was an intended third-party beneficiary of a particular provision in a contract between defendants WMATA and Kiewit Construction Company, which required that Kiewit submit to WMATA written permits and releases from owners of property where fill from a construction project was to be deposited. <u>Id.</u> at *5. Plaintiff alleged that Kiewit breached this provision by failing to supply adequate permits and releases covering plaintiff's land, and that WMATA breached this provision by failing to insist on the production of those documents. <u>Id.</u> This Court held that a "fatal flaw" in the plaintiff's claim against WMATA was that the plaintiff could not sue WMATA for Kiewit's breach. <u>Id.</u> Specifically, "because the promisor . . . is clearly Kiewit, and because WMATA is the promisee, WMATA cannot be sued on a third party beneficiary theory arising from the WMATA/Kiewit contract." <u>Id.</u> at *6.

In sum, even if Ms. Prasad were an intended third-party beneficiary of a contract between the University and VT that required VT to comply with the No-Contact Order, she would merely step into the shoes of the promisee (the University). Under common law contract theory, that

might entitle her to sue the promisor (VT) for his failure to comply with that Order, but it would not give her the right to sue the University.  Ms. Prasad's claim of breach of a third-party contract must therefore be dismissed.

## II.    The Third Cause of Action (Promissory Estoppel) Must be Dismissed

A viable claim for promissory estoppel requires affirmative answers to four questions: (1) was there a promise; (2) should the promisor have expected the promisee to rely on the promise; (3) did the promisee so rely to his detriment; and (4) would injustice result from a failure to enforce the promise?  Bender v. Design Store Corp., 404 A.2d 194, 196 (D.C. 1979); see also In re U.S. Office Products Co. Sec. Litigat., 251 F. Supp. 2d 58, 73 (D.C.C. 2003).  In this case, Ms. Prasad's promissory estoppel claim fails to allege the existence of either an estopping promise or detrimental reliance and therefore must be dismissed.

Under District of Columbia law, the promise supporting a promissory estoppel claim must be definite, as reliance on an indefinite promise is not reasonable.  Granfield v. Catholic Univ. of Am., 530 F.2d 1035, 1040 (D.C. Cir. 1976).  "Though a promise need not be as specific and definite as a contract, it must still be a promise with definite terms on which the promisor would expect the promisee to rely."  In re Office Products Co. Securities Lit., 251 F. Supp. 2d 77, 97 (D.D.C. 2003) (citing Bender, 404 A.2d at 196, and Granfield, 530 F.2d at 1041).  Ultimately, the promise must be "clear and unambiguous and sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms."  28 Am. Jur. 2d., Estoppel and Waiver, § 55 (2011).  Accord Granfield, 530 F.2d at 1040 (finding the "undertaking lacked the specificity necessary for a promisee to justly expect and reasonably rely on performance, whether or not appellant relied in fact.")

Here, Ms. Prasad alleges only that "Defendant GWU promised it would take actions against VT in order to protect Ms. Prasad."  Compl. ¶ 124.  Leaving aside that Ms. Prasad admits

-6-

that GW *did* take such actions – imposing No-Contact Orders and ultimately removing VT from GW's campus – the Complaint nowhere alleges that GW promised her it would take any particular (or additional) actions in order to protect her from VT.  See Simard v. Resolution Trust Corp., 639 A.2d 540, 552 (D.C. 1994) ("[D]emonstration of a promise is a prerequisite to invocation of the doctrine of promissory estoppel.") (quoting United States Jaycees v. Bloomfield, 434 A.2d 1379, 1384 (D.C. 1981)).  Absent any allegation that GW promised Ms. Prasad that it would take specific actions there is nothing for the Court to enforce and no way for the Court to measure GW's alleged nonperformance.  See e.g., Simard, 639 A.2d at 553 (finding "no jury question on whether defendants promised [a specific] position for a specific period of time or promised that it would not be modified without just cause …. [p]laintiff's evidence presents to the court only the words of an employer who is coloring the future of his business as brightly as possible."); Choate v. TRW, Inc., 14 F.3d 74, 77 (D.C. Cir. 1994) (finding employer's statement that "[t]he topic [of the employee's book] sounds wonderful, and I have no problems with it'" was not a promise specific enough to sustain a claim of promissory estoppel).

Ms. Prasad also fails to allege facts showing that she relied to her detriment on any promise by GW.  To establish detrimental reliance, Ms. Prasad must allege that she took action *because of* a promise made to her by the University.  See In re Office Products Co. Securities Lit., 251 F. Supp. 2d 58, 73 (D.D.C. 2003).  She has not met this burden.  Although she says she "relied on GW's promises to her detriment," Compl. ¶ 128, she offers no facts to support this contention.  Instead, most of Ms. Prasad's allegations describe actions she purportedly took because she regarded the University's response to VT as ineffective, not because of, or in reliance on, any alleged promise to her by the University.  See, e.g., Compl. ¶ 56 (time away

from D.C.), ¶ 71 (filed for a Civil Protection Order), ¶ 85 (moved to Florida), ¶ 100 (filed for a second Civil Protection Order).

In sum, Ms. Prasad's promissory estoppel claim fails not only due to her failure to allege an estopping promise, but also because she has not alleged that she relied on any promise made to her by the University.  It must therefore be dismissed.

### III.    The Fourth Cause of Action (Negligent Infliction of Emotional Distress) Must be Dismissed

To prove negligent infliction of emotional distress (NIED) in the District of Columbia, a plaintiff must show that the defendant: (a) caused the plaintiff direct physical injury; or (b) placed her in a "zone of physical danger" and, as a result, the plaintiff "feared for [her] own safety." Hedgepeth v. Whitman Walker Clinic, 22 A.3d 789, 796 (D.C. 2011) (quoting Williams v. Baker, 572 A.2d 1062, 1066) (D.C. 1990) (en banc).  Alternatively, D.C. courts permit NIED claims where there is a "special relationship" between the parties that "necessarily implicates the plaintiff's emotional well-being" and where there is an "especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff."  Hedgepeth, 22 A.3d at 810-11.

Ms. Prasad's allegations do not meet any of these requirements.  As discussed below, the only injury Ms. Prasad alleges in support of her NIED claim is post-traumatic stress disorder (PTSD), which this Court considers a psychological injury, not a physical one.  In addition, while Ms. Prasad asserts the remote possibility of personal peril as a result of the University's conduct, such an allegation is insufficient to place her in a "zone of physical danger" for purposes of a NIED claim.  And, because Ms. Prasad's relationship with the University is not the type of "special relationship" that necessarily implicates her emotional well-being, she cannot avail herself of this alternative basis for NIED relief.

### A.      Physical Injury

Although Ms. Prasad claims that she suffers from PTSD due to the University's negligent response to VT's sexual harassment, Compl. ¶ 135, this Court has consistently considered PTSD to be a non-physical injury.  See e.g., Franchak v. D.C. Metro. Police Dep't, 932 A.2d 1086, 1094 (D.C. 2007) (rejecting an officer's claim for administrative sick leave under Police and Firefighters Retirement and Disability Act where the officer suffered from "psychological injury/illness diagnosed as acute stress disorder, or post-traumatic stress disorder (PSTD)" but "suffered no physical injury"); Estate of Bland v. Islamic Republic of Iran, 831 F. Supp. 2d 150, 155 (D.D.C. 2011) (following the entry of default judgment in an action brought by multiple plaintiffs under the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act against the Islamic Republic of Iran, the action was referred to a special master for consideration of appropriate awards of damage, and with respect to the case of a man with PTSD, the opinion notes that he "suffered severe emotional injuries, but considering his *lack of* physical injuries, the Court will heed the special master's recommendation to depart down.") (emphasis added); Valencia v. Islamic Republic of Iran, 774 F. Supp. 2d 1, 8 (D.D.C. 2010) ("[t]hough he was lucky *to escape* physical injury, the trauma of his experiences after the explosion eventually manifested as post-traumatic stress disorder ('PTSD')."  (emphasis added).

Other courts considering this question in the specific context of NIED claims have also held that PTSD is not a physical injury requisite to such a claim.  See Cohler v. U.S. ex rel. Nat. Park Services, No. CIV. 2005-29, 2008 WL 2563768, at *5 (D.V.I. June 24, 2008) (collecting cases).  See, e.g., Wilson v. Sears Roebuck and Co., 757 F.2d 948, 950–53 (8th Cir. 1985) (the only condition of the plaintiff manifesting itself and shown to be related to the defendant's negligence was post-traumatic stress disorder, which is not the type of physical injury that could support a NIED claim);  Cherney v. City of Burnsville, No. CIV. 06-4265 DWF/SRN2008 WL

108964, *10–11 (D. Minn. Jan. 8, 2008) (evidence that the plaintiff was diagnosed with and medicated for post-traumatic stress disorder, and was medicated for insomnia, failed to prove physical injury sufficient to sustain the plaintiff's claim for NIED); Michalezewski v. CSX Transp., Inc., No. 05C3363, 2007 WL 2875627 at *7 (N.D. Ill. Sept. 30, 2007) (diagnosis of post-traumatic distress accompanied by "sleeplessness, discomfort, fear, and regret are exactly the sorts of intermediate effects that consistently fail to meet the high bar of [NIED] impact"); Myseros v. Sissler, 387 S.E.2d 463, 465 (Va. 1990) (post-traumatic stress disorder, anxiety disorder, nausea, difficulty sleeping and breathing, and loss of appetite and weight, are manifestations of an underlying emotional disturbance, not of a physical injury).

Ms. Prasad has therefore failed to allege the kind of physical injury necessary to sustain a NIED claim.

### B.    Zone of Physical Danger

In the absence of actual physical injury, a plaintiff can pursue a NIED claim *only* if (1) she was in a zone of physical danger created by defendant's conduct; and (2) the defendant's negligence caused her to fear reasonably for her safety. Williams v. Baker, 572 A.2d 1062, 1066 (D.C. 1990). This is known as the zone-of-physical-danger rule. But to be in the zone of danger, a plaintiff must be "*physically* endangered by the defendant's negligent activity." Johnson v. District of Columbia, 728 A.2d 70, 77 (D.C. 1999) (emphasis added); Cauman v. George Washington Univ., 630 A.2d 1104, 1106 (D.C. 1993). And "[t]he plaintiff's presence in the zone of danger [must] be *contemporaneous* with her fear for her own safety." Jones v. Howard Univ., 589 A.2d 419, 423 (D.C.1991) (emphasis added). Ms. Prasad fails to meet this requirement.

Although the Complaint alleges that the University's negligent response to VT's actions created a "harassing and unsafe educational environment," Compl. ¶ 136, such an environment, even if it existed, does not create the kind of physical risk necessary for a NIED claim. See

-10-

McMillan v. Nat'l R.R. Passenger Corp., 648 A.2d 428, 434 (D.C. 1994) (plaintiff failed to state a claim for NIED because "he offered no evidence that his physical safety was imminently endangered by his co-workers' alleged harassment and horseplay"); Ryczek v. Guest Servs., Inc., 877 F. Supp. 754, 764 (D.D.C. 1995) (employer and supervisor could not be held liable for NIED in case of employee allegedly subjected to sexual harassment by supervisor, absent evidence of any direct physical injury, or evidence that employee's physical safety was imminently endangered and that threatened injury was not minimal); Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner, 949 F. Supp. 13, 20 (D.D.C. 1996) (plaintiff failed to show zone of physical danger where plaintiff alleged that defendant employer failed to stop racial slurs and harassment by employees). Nothing in the Complaint suggests that there was a physically threatening incident caused by the University's action or inaction that placed Ms. Prasad in *imminent* fear for her safety. In fact, the only physical altercation between Ms. Prasad and VT alleged in the Complaint occurred after Ms. *Prasad* asked the University to *rescind* the No-Contact Order the University had imposed to prevent interaction between the two, see Compl. ¶¶ 22-34, and thereafter VT was suspended from the University and was not present on campus with Ms. Prasad at all. Compl. ¶ 62.

Ultimately, where, as here, the alleged physical danger is speculative or remote, a plaintiff cannot establish the requisite zone of danger sufficient to state a claim of NIED. See Ryczek, 877 F. Supp. at 764 (noting that supervisor's statement that she could "break [plaintiff] in two" was not viewed as a threat of imminent bodily injury). Ms. Prasad has failed to make the kind of zone of physical danger allegations necessary to sustain a NIED claim.

### C.    Special Undertaking

The District of Columbia Court of Appeals has recognized an exception to the zone of physical danger rule in very limited situations where "(1) the defendant has a relationship with

the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have in fact caused serious emotional distress to the plaintiff." Hedgepeth, 22 A.3d at 810-11.

This exception is not available to Ms. Prasad because an adult student's relationship with a University does not fall within the narrow category of "special relationships" contemplated in Hedgepeth. In that case, the plaintiff alleged that her physician negligently misdiagnosed her with HIV, which caused her emotional distress. Id. at 819. The Court found that the doctor-patient relationship inherently implicated plaintiff's emotional well-being and that the misdiagnosis of HIV – "a potentially fatal infection that carries a significant social stigma" – was especially likely to cause serious emotional distress. Id. On that basis, the Court permitted plaintiff to go forward with her NIED claim despite having failed to meet the physical injury or zone of physical danger requirements. Id. at 820.

The Court in Hedgepeth declined to provide a complete list of "special relationships" that necessarily implicated a plaintiff's emotional well-being, but it offered the following examples, all of which are readily distinguishable from the relationship between a university and its adult student: psychiatrist/therapist-patient, a hospital's false report of death; guardians over the vulnerable; and a funeral home's mishandling of a corpse. Id. at 813-15. The Court made clear, moreover, that "not all relationships give rise to a duty to avoid negligent infliction of emotional distress." Id. at 812 n.39. *See also* Doe v. Virginia Wesleyan College, No. CL146942, 2015 WL 3867976 (Va. Cir. Ct. June 20, 2015) ("this Court elects not to add the college/student relationship—where an *in loco parentis* relationship does not exist—to the list of special

relationships"); Bradshaw v. Rawlings, 612 F.2d 135, 138 (3d. Cir. 1979) ("[t]he modern American college is not an insurer of the safety of its students").

Here, Ms. Prasad has not alleged the kind of "special relationship" that Hedgepeth requires in order for her to proceed with a NIED claim in the absence of physical injury or without being in the zone of danger.  For this reason and those discussed previously, her NIED claim must be dismissed.

## IV.     The Fifth Cause of Action (Negligent Retention) Must be Dismissed

Ms. Prasad asserts that the University negligently retained Gabriel Slifka, the Director of GW's Office of Student Rights and Responsibilities.  She alleges broadly that the University failed to ensure that Mr. Slifka "followed written university procedures and ensure Mr. Slifka did not aggravate the harm suffered by sexual harassment victims, Compl. ¶ 145, and accuses Mr. Slifka of "treating her with callous disregard and failing to investigate and address sexual harassment."  Compl. ¶ 142.  Yet Ms. Prasad does not allege any facts that would show this claim to be plausible, and the facts she does allege show that it is not.

Ms. Prasad's negligent retention claim also fails because she alleges no facts that would establish the University knew or should have known that Mr. Slifka was behaving in a "dangerous or incompetent" manner toward her.  See Giles v. Shell Oil Corp., 487 A.2d 610, 613 (D.C.1985) (a plaintiff must show that the employer "knew or should have known its employees behaved in a dangerous or otherwise incompetent manner and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee"); see also Phelan v. City of Mount Rainier, 805 A.2d 930, 940 (D.C. 2002) (claim of negligent retention "requires proof that the employer breached a duty to plaintiff to use reasonable care in the ... retention of an employee which proximately caused harm to plaintiff").

In addition, this claim fails because Ms. Prasad appears to predicate it upon duties imposed by Title IX and not the common law as required by D.C. law.  Beyene v. Hilton Hotels Corp., 815 F. Supp. 2d 235, 252–3 n. 21 (D.D.C. 2011) (claim of negligent retention "must be predicated on 'common law causes of action or duties otherwise imposed [on the employer] by the common law.'") (citing Griffin v. Acacia Life Ins. Co., 925 A.2d 564, 576–77 (D.C. 2007)).

## A.    Failure to Allege Facts Showing the Claim Is Plausible

Ms. Prasad claims that Mr. Slifka failed to follow "written university procedures" and harmed her by "fail[ing] to investigate and address sexual harassment."  Compl. ¶¶ 142, 145. Yet nowhere does she identify what procedures Mr. Slifka was supposed to have followed with regard to her, or explain how his alleged failure to do so (as distinguished from the actions of VT) harmed her.  See Chamberlain v. American Honda Finance Corp., 931 A.2d 1018, 1023 (D.C. 2007) ("factual allegations must be enough to raise a right to relief above the speculative level") (citing and quoting Twombly, 550 U.S. at 555).  Moreover, while Ms. Prasad packs her Complaint with generic characterizations of Mr. Slifka's supposed "callous" and "disinterested" responses to her reports about VT, see Compl. ¶¶ 40, 142, her factual allegations demonstrate exactly the opposite: Mr. Slifka swiftly imposed No-Contact Orders on VT upon receipt of those reports, initiated disciplinary proceedings against VT after Ms. Prasad claimed he had assaulted her, and suspended VT from the university at the conclusion of those proceedings, thereby removing him entirely from the campus community.  See Compl. ¶¶ 22, 34, 39, 57, 61.  Ms. Prasad's conclusory allegations are therefore insufficient to state a claim.  See Iqbal, 556 U.S. at 678 (complaint must contain sufficient factual allegations to show claim is plausible); Chandamuri v. Georgetown Univ., 274 F. Supp. 2d 71, 79 (D.D.C. 2008) (dismissing complaint because it alleges "facts that render success on the merits impossible").

## B.      Failure to Allege Knowledge on the University's Part

Ms. Prasad blithely proclaims that, "upon information and belief, other sexual harassment victims have made GWU aware of the harm Mr. Slifka had inflicted upon them."  Compl. ¶ 144. That allegation is not enough to support a negligent retention claim.  When a plaintiff fails to set out facts supporting a reasonable conclusion that an employer knew or should have known that an employee was acting in a "dangerous and incompetent" manner and failed to supervise him, dismissal is warranted.  Giles, 487 A.2d at 613; Alqahtani v. George Washington Univ., No. CIV. 95-803 TFH, 1996 WL 568843, at *2 (D.D.C. Mar. 29, 1996).

In Alqahtani, the plaintiff asserted unlawful discrimination based on race in the admissions process, claiming that an employee of the University subjected him and other individuals of Arab heritage to mistreatment.  Id. at *1.  He also contended that the University negligently retained this employee.  Among other things, the plaintiff claimed that the University employee informed him that to secure admission, he would have to make a payment or perform sexual acts with a male representative of the admissions office.  Id.  The plaintiff claimed that those and other acts were done "in concert" with individuals from the Undergraduate Admissions Office, the Office of the Registrar, and the Office of International Student Services.  Id.  In granting the University's motion to dismiss the negligent retention claim, this Court held that "all that the Court is required to do at this stage is accept plaintiff's factual allegations as true and all reasonable inferences therefrom.  Id. at *4.  The Court is "not required to indulge the plaintiff's utter speculation as to what might have occurred and who might have been involved."  Id. at *4.

Alqahtani is among a line of cases in this Court finding that the broad assertion that a defendant "had been on notice … without any indication as to why, when, or how Defendant was on notice, lacks meaningful factual content and is thus insufficient on its own to show actual

-15-

knowledge by any appropriate person or persons of the alleged harassment, at a time when it was ongoing such that remedial action would have been possible." Bello v. Howard Univ., 898 F. Supp. 2d 213, 215 (D.D.C. 2012). "A court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint … [n]or must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C.C. 1994).

The vague and speculative allegations of the University's knowledge in support of Ms. Prasad's negligent retention claim are no better than the allegations this Court found insufficient in Alqahtani, Bello, and Kowal. Ms. Prasad's negligent retention claim therefore fails on this basis as well.

### C.      Failure to Predicate Claim on a Common Law Duty

A claim of negligent retention "must be predicated on 'common law causes of action or duties otherwise imposed [on the employer] by the common law.'" Beyene v. Hilton Hotels Corp., 815 F. Supp. 2d 235, 252–3 n. 21 (D.D.C. 2011) (citing Griffin v. Acacia Life Ins. Co., 925 A.2d 564, 576–77 (D.C. 2007)). This means that a negligent retention claim cannot be based on a statutory claim or a duty imposed by statute, like Title IX. See Griffin v. Acacia Life Ins. Co., 925 A.2d 564, 577 (D.C. 2007) (rejecting a common law negligent supervision claim predicated on a violation of the District of Columbia Human Rights Act); see also Hays v. Patton–Tully Transportation Co., 844 F. Supp. 1221, 1223 (W.D. Tenn. 1993) ("a claim that an employer negligently supervised an employee who has sexually harassed a co-employee does not transmute sexual harassment into a common law tort") (cited with favor in Griffin v. Acacia Life Ins. Co.) Here too, because Ms. Prasad has not pled a viable common law tort claim, her negligent retention claim fails.

-16-

## CONCLUSION

For all of the foregoing reasons, Ms. Prasad's Second, Third, Fourth, and Fifth Causes of Action against the University must be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,


*/s/ William D. Nussbaum*
William D. Nussbaum (DC Bar # 941815)
wnussbaum@saul.com
Saul Ewing LLP
1919 Pennsylvania Ave., NW, Suite 550
Washington, DC 20006
(202) 295-6652 telephone
(202) 295-6715 facsimile
*Counsel for Defendant*
*The George Washington University*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of December 2015, a copy of **DEFENDANT THE**

**GEORGE WASHINGTON UNIVERSITY'S PARTIAL MOTION TO DISMISS** was

served upon the following counsel for plaintiff via the Court's electronic filing system and first-

class U.S. mail:

> Daniel Hornal
> Daniel Snow
> Talos Law
> 705 4th Street, NW
> Washington, D.C. 20001
>
> Meghan Boone
> Michael Kirkpatrick
> Institute for Public Representation
> Georgetown University Law Center
> 600 New Jersey Avenue, Suite 312
> Washington, D.C. 20001

*/s/ William D. Nussbaum*
William D. Nussbaum

-18-