IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  | : |  |
|---|---|---|
| RICCA PRASAD, | : | |
| *Plaintiff,* | : | |
| | : | No. 1:15-cv-1779 |
| v. | : | Judge Amy Berman Jackson |
| | : | |
| THE GEORGE WASHINGTION | : | |
| UNIVERSITY, | : | |
| *Defendant.* | : | |
| | : | |

**DEFENDANT THE GEORGE WASHINGTON UNIVERSITY'S**
**REPLY IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS**

Defendant the George Washington University ("the "University" or "GW") submits this reply in support of its partial motion to dismiss the Second, Third, Fourth, and Fifth Causes of Action in the Complaint of plaintiff Ricca Prasad.

**INTRODUCTION**

Ms. Prasad has filed a five-count complaint based upon the University's alleged failure to promptly and appropriately investigate and respond to sexual harassment by a former GW student and boyfriend to whom she (and so the University) refers as VT. The first cause of action is asserted under Title IX, which the University has not moved to dismiss.[1] The University has moved to dismiss Ms. Prasad's second through fifth causes of action, which include breach of third-party beneficiary contract, promissory estoppel, negligent infliction of emotional distress, and negligent retention.

In her opposition to the University's motion, Ms. Prasad asserts that dismissal is premature. Her primary argument is that, no matter what she said or failed to say in her

---

[1]    The University anticipates moving for summary judgment on the Title IX claim when the time comes.

Complaint, and regardless of whether her claims are plausible, she should be given an opportunity to develop a "full factual record" before the Court addresses the legal sufficiency of the four claims the University has moved to dismiss. This argument is unsupported by the law, ignores the fact that these claims are not legally viable, and fails to appreciate the importance of carefully vetting a Complaint at the 12(b)(6) stage. Without such vetting, every plaintiff would have an opportunity to pursue discovery no matter how unsustainable their allegations are, placing an unreasonable burden on litigants and courts and completely undermining the purpose of Rule 12 (b)(6).

Ms. Prasad also devotes considerable effort to making meaningless distinctions between her case and those upon which the University relies and to citing other cases that do nothing to undercut the University's arguments.

In the end, Ms. Prasad has attempted to turn a Title IX case into something more than it should be, and her opposition gives the Court no good reason to preserve her four unsustainable common law claims.

## ARGUMENT

### I.    The Second Cause of Action (Breach of Third-Party Beneficiary Contract) Must be Dismissed

In the memorandum in support of its partial motion to dismiss ("Memorandum" at 4-6), the University argued that Ms. Prasad's Second Cause of Action fails because she has not alleged a breach of contract *by the University* that impacted her status as a purported third-party beneficiary. Instead, in her Complaint, she has alleged that the University awarded VT a degree despite *his* breach of a contract with the University in which among other things, *he promised* to comply with the No-Contact Order the University put in place to protect Ms. Prasad from him. Thus, according to the Complaint, VT was the promisor and the University was the promisee.

In her opposition to GW's motion ("Opposition" at 5), Ms. Prasad attempts to blunt the force of the University's argument by misapprehending relevant case law and suggesting that this is an issue better left for summary judgment because, notwithstanding the plain language of the Complaint, the Court cannot yet determine whether the University was a promisor or a promisee and will require a full summary judgment record before it can do so. This argument is wrong. On the basis of Ms. Prasad's own allegations, the Court has all it needs to identify the University as the recipient of VT's promise and to dismiss the Second Cause of Action at this time.

### A.    The Case is in the Right Procedural Posture For Dismissal of the Claim of Breach of Third-Party Beneficiary Contract

Ms. Prasad's primary argument is that the University relies on cases that were decided after the motion to dismiss stage. That is not correct. The most recent case cited by the University dismissed a third-party beneficiary's claim at the motion to dismiss stage for many of the same reasons that Ms. Prasad's claim should be dismissed. <u>Corp. Sys. Res. v. Washington Metro. Area Transit Auth.</u>, 31 F. Supp. 3d 124, 134 (D.D.C. 2014).

Furthermore, the procedural posture of the other cases cited in the University's Memorandum was irrelevant to the fundamental promisee-promisor inquiry. For example, in <u>John D. Neumann Properties, Inc. v. Washington Metropolitan Area Transit Authority</u>, the third-party beneficiary theory was not raised until plaintiff 's dispositive motion opposition. <u>See</u> No. CIV.A. 86-2013, 1988 WL 9582, at *5 (D.D.C. Jan. 29, 1988) ("[a]lthough not pleaded in the second amended complaint, plaintiff asserts in its motion papers that it is an intended third party beneficiary"). This Court determined that it had sufficient information to make a decision on the issue on the papers. <u>Id.</u> at *6 ("the promisor … is clearly Kiewit, and … WMATA is the promisee"). This Court summarily dismissed the claim in <u>Neumann</u>, because, as in this case, the

alleged beneficiary was attempting to hold the defendant liable for not enforcing the *promisor's* obligations.  Id. at *1, *5-*6 (D.D.C. Jan. 29, 1988) (dismissing a landfill owner's claim that WMATA should be liable to him because a general contractor's subcontractor dumped on his land without a permit, which was a requirement of the general contractor's contract with WMATA that WMATA allegedly failed to enforce).

Likewise, in Campbell, looking no further than the alleged promise, the court identified the promisee and dismissed the claim with minimal analysis.  In doing so, the court noted that a defendant cannot be liable to a third-party beneficiary for the *other contracting party's alleged breach.*  D.C. v. Campbell, 580 A.2d 1295, 1297-98 (D.C. 1990) (dismissing a subcontractor's claim that the District of Columbia breached an agreement by awarding a public works project to a general contractor despite the general contractor's failure to obtain a payment bond).[2]

### B.       The University is not the Promisor

Neumann and Campbell are dispositive of Ms. Prasad's third party beneficiary claim as pled.  Viewed through any lens, VT is the promisor.  As articulated in the Complaint, the alleged contract between GW and VT states that "in order for VT to receive his degree, *he* must remain in compliance with the No Contact Order for three years from the date of the contract, and *he* must not violate any other university policy."  Compl. ¶ 75.  Taking Ms. Prasad's description of

---

[2]       Ms. Prasad's Opposition references the standard in Bituminous Coal Operators Association v. Connors, 867 F.2d 625 (D.C. 1989).  That case, however, did not address the promisee-promisor inquiry at issue here; it turned on whether a pension plan is a typical third-party beneficiary.  Id. at 632.  The University cited it for the general proposition that a third-party beneficiary who brings a contract claim steps into the shoes of the promisee -- a proposition that is conceded by Ms. Prasad.  Opposition at 5; see also Lewis v. D.C., No. 10-5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded") (quoting Hopkins v. Women's Div., Gen. Bd. Of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C 2003)).

the alleged contract as true for purposes of this motion, the University *cannot* be the promisor. The action spelled out in the contract from which Ms. Prasad allegedly stood to benefit was VT's compliance with the No Contact Order, and only VT could accomplish that.  See e.g., Campbell, 580 A.2d at 1302.

Campbell is particularly instructive.  In that case, the District of Columbia Court of Appeals rejected a convoluted effort (not unlike Ms. Prasad's) to flip a contractual promise on its head in order to obscure the identity of the promisor.  There, the alleged promise was that *before* the District of Columbia would award a public works project to a general contractor, the contractor had to obtain a payment bond for the protection of its subcontractors, among others. 580 A.2d at 1298, n.2.  In other words, the promise was that before A would give X to B, B had to do Y.

Similar to the facts alleged here, the general contractor in Campbell did not do Y (i.e., obtain the bond), yet it was awarded X (i.e, the public works project) by the District.  See id. at 1302.  Plaintiff, a subcontractor, sued the District under a third-party beneficiary theory claiming that the District had, in essence, "promised" that it would *not* award a contract before a bond was obtained.  Id. at 1302 ("according to [the plaintiff], the District breaches its contractual duty 'to insist upon a payment' and is therefore liable for that breach to Campbell, the third-party beneficiary.")  In other words, plaintiff contended that the District was the promisor and that the true promise was that A *could not* give X to B *unless* B did Y.

Based solely on the alleged promise, the Court rejected the alleged beneficiary's contention, holding that "while the District as promisee failed to enforce [the contractor's] promise, as is the case in many third-party claims, this does not change the fact that the promisor, not the promisee, committed the breach."  Id.  In doing so, the court appeared to focus on what

would benefit the subcontractor/beneficiary -- the bond.  Id. at 1302 ("it is the contractor … who has promised, the District to obtain a payment bond.… Thus, [the contractor] is the promisor and the District is the promisee.")  Because only the general contractor could obtain the bond, the court determined that the general contractor, not the District, was the promisor.  Id.  Plaintiff's claim was dismissed.  Id.  at 1303.

The same logic applies squarely here.  Ms. Prasad stood to benefit from VT's compliance with the No-Contact Order.  Because only VT could accomplish that, he is the promisor pertinent to her claim, not the University.  As a result, if Ms. Prasad wishes to assert any alleged rights as a "third party beneficiary" in this matter, she must do so against VT, not the University.[3]

### C.    Ms. Prasad's Alleged Reliance on an Alleged Contract Does Not Form the Basis of a Claim against the University

In her Opposition, Ms. Prasad alternatively contends that even if the University was the promisee, the Restatement (Second) of Contracts § 311 provides her with an independent basis to sue the University because she "withdrew her civil protection order against VT in reliance on the sufficiency of the protection provided by the contract."  Opposition at 7.  In making such a contention, Ms. Prasad (yet again) attempts to recast the University's failure to enforce a contractual provision as a breach of that contract.  Opposition at 8 (claiming that the University's "failure to enforce" a contractual provision equates to a "breach" for which she, as an alleged intended third-party beneficiary, could sue).  As noted above, such an argument was expressly rejected by this Court in Corporate Systems Resources v. Washington Metropolitan Area Transit

---

[3]    In a footnote, Mr. Prasad states that the only circumstance in which a third party beneficiary may enforce a promise against either the promisee or the promisor is in the case of a creditor beneficiary, i.e., when the third party has a previously enforceable right against a promisee that has been assumed by the promisor, or in certain suits by trustees.  Opposition at 7 n.1.  Here, the Complaint does not allege that a trust has been created, nor does it allege a third party creditor beneficiary theory or any facts to support such a theory.

Authority, 31 F. Supp. 3d 124, 134 (D.D.C. 2014) ("[t]he most that could be said here is that Defendant WMATA 'failed to enforce a contract provision that it was entitled to enforce'" but "[d]eclining to enforce a contract right does not constitute a breach by Defendant WMATA of any contract.") (Howell, J.) (quoting Sullivan v. United States, 625 F.3d 1378 (Fed. Cir. 2010)). The argument should likewise be rejected here.

Ms. Prasad's reliance on Restatement (Second) of Contracts § 311 does not compel a different result. Although the Restatement recognizes certain limitations on the power of contracting parties to vary the alleged duty to an intended third-party beneficiary, it does not provide Ms. Prasad with a platform to sue the University. Indeed, in the only case Ms. Prasad cites to support this argument, Fields v. Tillerson, the third-party beneficiary used the Restatement (Second) of Contracts § 311 as a shield, not a sword, claiming that an alleged rescission was ineffective against him. 726 A.2d 670, 673 (D.C. 1999). Specifically, in Fields, clients who were prevailing parties in a legal malpractice action against their former attorney and law firm sought to collect on their judgment. Id. at 670. *In defense*, the third-party beneficiary claimed that any obligation arising out of the judgment against him had been fully satisfied by the terms of a separate settlement agreement between the clients and another partner in the firm, despite the contracting parties' decision to rescind that agreement. Id. at 672-73. The court disagreed. Id. Importantly, nothing in that holding or the decision changes the law in this Court that a failure to enforce a contractual provision is not a breach of contract.

## II.      The Third Cause of Action (Promissory Estoppel) Must be Dismissed

In its Memorandum, the University pointed out that Ms. Prasad's promissory estoppel claim alleged only that "Defendant GWU promised it would take actions against VT in order to protect Ms. Prasad" and argued that such an allegation was insufficiently specific to be enforceable and also failed to assert the requisite detrimental reliance on Ms. Prasad's part.

7

Memorandum at 6-8.  In her Opposition, Ms. Prasad struggles to salvage this claim by relying on a selective quotation from a single case, which states that a complaint must be viewed in its "totality," Vila v. Inter-Am. Inv. Corp., 570 F.3d 274 (D.C. 2009).  Opposition at 8.

Even viewing Ms. Prasad's Complaint in its "totality," her promissory estoppel claim is deficient and must be dismissed.  Indeed, the best she can muster is a reference to several paragraphs in the Complaint that mention the alleged contract between the University and VT. Id.  But as discussed in Section I above, even if the alleged contract could form an estopping promise, the promisor was VT, not the University.  Accordingly, if, as the Opposition suggests, the contract between the University and VT is the sole basis for the promissory estoppel claim, the alleged contractual "promise" cannot form the basis of Ms. Prasad's claim *against the University*, and dismissal is proper.  See Simard v. Resolution Trust Corp., 639 A.2d 540, 552 (D.C. 1994) ("[D]emonstration of a promise is a prerequisite to invocation of the doctrine of promissory estoppel.") (quoting United States Jaycees v. Bloomfield, 434 A.2d 1379, 1384 (D.C. 1981)).  In addition, "District of Columbia law is clear that promissory estoppel applies to arrangements only where no written agreements exist." Parnigoni v. St. Columba's Nursery School, 681 F. Supp. 2d 1, 27 (D.D.C. 2010).  *See also* D.C. Oil, Inc. v. ExxonMobil Oil Corp., 746 F. Supp. 2d 152, 159 (D.D.C. 2010) (same).  Since Ms. Prasad alleges a written agreement between the University and VT, which provides her with contract rights (against VT, at best), a theory of recovery against GW based on promissory estoppel is not available to her.

### III.    The Fourth Cause of Action (Negligent Infliction of Emotional Distress) Must be Dismissed

In its Memorandum, the University argued that Ms. Prasad's claim of negligent infliction of emotional distress (NIED) must be dismissed because: (i) the injury upon which the claim was based -- post-traumatic stress disorder -- is not considered a physical injury; (ii) Ms. Prasad's

allegations did not place her within the "zone of danger" necessary for a NIED claim; and (iii) Ms. Prasad's relationship with the University was not the type of "special relationship" which might provide an alternative basis for NIED relief.  Memorandum at 8-13.  In her Opposition, Ms. Prasad effectively confirms that this claim must be dismissed.  She concedes that she has failed to allege the requisite physical injury, seeks an unprecedented expansion of the "zone of danger," and misapprehends what a "special relationship" means under D.C. law.

### A.    Lack of Physical Injury

Ms. Prasad concedes that the initial basis for her NIED claim is flawed.  In her Complaint, Ms. Prasad identified "three theories" for her NIED claim, Compl. ¶¶ 133-134, one of which was that she was she was "physically impacted" with "severe PTSD" by the University's actions or inactions.  Compl. ¶ 135.  In its Memorandum, the University cited to well-established precedent confirming that PTSD is not a physical injury.  Memorandum at 9. Conceding that the University is correct, Ms. Prasad now backtracks from her first "theory" and appears to claim that "a serious and verifiable injury" alone, physical or not, is sufficient to support an NIED claim.  Opposition at 12.  That misstates the law.

In DeStefano v. Children's National Medical Center, a case cited by Ms. Prasad, the court explicitly stated (in a case involving PTSD) that "a plaintiff who was not physically injured can recover on a claim for negligent infliction of emotional distress *only if* he or she was in the zone of physical danger and was caused by defendant's negligence to fear for his or her own safety." 121 A.3d 59, 72 (D.C. 2015) (quoting Williams v. Baker, 572 A.2d 1062, 1067 (D.C. 1990)). Therefore, even assuming that her alleged PTSD is a serious and verifiable injury, Ms. Prasad still must establish that she was in the zone of physical danger.[4]

---

[4]    Ms. Prasad cites Daigle v. Philips Petroleum Co., 893 S.W.2d 121, 122-23 (Tex. App. 1995), as support for an NIED claim based on PTSD.  Opposition at 12-13.  Daigle applied Texas state law

### B.      Zone of Physical Danger

As explained in the University's Memorandum, the zone of physical danger rule permits recovery for NIED *only if* the plaintiff was "physically endangered by the defendant's negligent activity" and such negligence caused her to "reasonably fear for her own safety." Williams v. Baker, 572 A.2d 1062, 1066 (D.C. 1990); Johnson v. D.C., 728 A. 2d 70, 77 (D.C. 1999).  In her Opposition, Ms. Prasad concedes that the zone of physical danger rule was crafted to protect the "near miss."  Opposition at 13.  Yet she seeks application of the rule well beyond the "near miss."  Specifically, to accept Ms. Prasad's view, the Court must conclude that an individual can remain in the zone of physical danger *for years*. Opposition at 16 (contending that the University's alleged failure to stop VT "over a period of years" somehow placed her in a zone of danger).  There is no support for such a conclusion.

### 1.      Ms. Prasad was not placed in the zone of physical danger by the University's actions or inactions.

Although the Complaint alleges generically that the University's "negligent conduct placed [Ms. Prasad] in the zone of immediate physical danger," Compl. ¶ 136, the supporting paragraphs of the Complaint do not bolster that bald allegation. See Opposition at 15; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding that a claim is not facially plausible unless the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

For example, allegations to which the Opposition refers about the actions of VT before there was any alleged notice to the University, Compl. ¶¶ 1, 12, 18, 26-27, or about the time period when Ms. Prasad had voluntarily retracted her University-issued No Contact Order,

---

and turned on the applicability of the state's rescue doctrine.  893 S.W.2d at 122-23. It has no bearing on the issues presented here.

Compl. ¶¶ 30-32, have no bearing on Ms. Prasad's NIED claim against the University because they cannot establish that she was in the zone of physical danger *as the result of the University's conduct*.  Williams, 572 A.2d at 1066.  The same is true of allegations about the University's response to VT's alleged cyber harassment.  Compl. ¶¶ 56, 65, 67, 77-78, 85 91-92.  The fact is, Ms. Prasad has not identified a single case that supports the expanded view of the zone of physical danger rule she now advocates, under which a plaintiff could be placed in imminent and contemporaneous fear of *physical* danger as the result of a defendant's failure to stop a third party from emailing or texting her.

It should not escape the Court's attention that in over 100 paragraphs of factual allegations in her Complaint, Ms. Prasad states that she was in VT's physical presence only *one time* other than their voluntary meeting in April 2013.  Compl. at ¶¶ 46-47.  And Ms. Prasad concedes that in that one instance, she was asleep and did not learn of VT's presence until after the fact, when her roommate and another student told her he had been there.  Compl. ¶¶ 46-47. Therefore, even taking all allegations as true and giving Ms. Prasad the benefit of every reasonable inference, she has failed allege sufficiently that she was placed in the zone of physical danger as a result of actions or inactions of the University.

> **2.      Even if Ms. Prasad could establish her presence in the zone of physical danger, she has not alleged that her fear was contemporaneous with her presence in the zone.**

As explained in the University's Memorandum, a plaintiff's fear for her safety must be contemporaneous with her presence in the zone of physical danger.  Memorandum at 10 (citing Jones v. Howard Univ., 589 A.2d 419, 423 (D.C. 1991).  Stated another way, "subsequent brooding over the actor's misconduct or the danger in which it had put the other is not enough to make the negligent actor liable for an illness so brought on."  Restatement (Second) of Torts §

436, cmt. c (1965).  In her Opposition, Ms. Prasad misinterprets <u>Jones</u> as the basis for a general exception to the "contemporaneous" requirement.  The case offers no such basis.

In <u>Jones</u>, a pregnant woman and her unborn twins were placed in physical danger by exposure to radiation and a surgical procedure to remove her gallbladder.  589 A.2d 419, 420 (D.C. 1991).  Although the plaintiff did not learn that she was pregnant until after the exposure, the court reasoned that the zone of physical danger rule may be satisfied *because* the threat of physical injury (by radiation exposure or surgery), if present, continued *throughout* the pregnancy from that moment forward.    <u>Id.</u> at 423.  The damage was done, so to speak, regardless of any subsequent actions or inactions of either party.  <u>Id.</u> at 421 (the plaintiff had already been exposed to the radiation and put through a procedure that the court noted, without equivocation, "in fact created a risk of spontaneous abortion").  And so, on that unique and factually distinguishable basis, the court created a "continued peril" theory to establish plaintiff's presence in the zone of physical danger.

Not only was the <u>Jones</u> "continued peril" theory premised on a theoretical but verifiable risk following particular medical procedures (facts not present here), the theory has never been applied in any other situation by any other D.C. court.  Applying it here -- and permitting a plaintiff to assert that she was in the zone of physical danger *for years* because of a defendant's alleged indifference to a third party's actions -- would extend <u>Jones</u> well beyond its intended parameters and blast such a gaping hole in the zone of physical danger rule that the rule would no longer exist.

### C.    Special Undertaking

In <u>Hedgepeth v. Whitman Walker Clinic</u>, 22 A.3d 789, 796 (D.C. 2011), the Court discussed circumstances – the plaintiff's "special relationship" with the defendant – that might provide an alternative basis for NIED relief in the absence of plaintiff's physical injury or his or

her presence in a "zone of danger." The <u>Hedgepeth</u> decision described a number of such special relationships, which did not include the relationship between a student and a university. No court in D.C. (or anywhere else) has ever extended <u>Hedgepeth</u> to the relationship between a student and a university. But this apparently does not deter Ms. Prasad.

In her Opposition, in an effort to demonstrate a "special relationship" and salvage her NIED claim, Ms. Prasad alleges that she "entrusted GW with her physical and emotional safety" and that "GW was the source of … her housing and her physical safety." Opposition at 18. There are two problems with these allegations. First, they do not appear in the Complaint, and thus can have no bearing on the pending motion. <u>See</u> <u>Corp. Sys. Res.</u>, 31 F. Supp. 3d at 131 (quoting <u>Arbitraje Casa de Cambio S.A. de C.V. v. U.S. Postal Serv.</u>, 297 F.Supp.2d 165, 170 (D.D.C. 2003) ("It is axiomatic that the complaint cannot be amended by the briefs in opposition to a motion to dismiss."). Second, they mean nothing as a legal matter.

In a related context, just last month, this Court deemed a custodial relationship between the District of Columbia and prison inmates insufficient to create a special-relationship. <u>Lesesne v. D.C.</u>, No. 10-CV-00602 (CRC), 2015 WL 7574746, at *4 (D.D.C. Nov. 25, 2015). Although the holding arose on summary judgment, it was not based on the factual record that had been created. <u>Id.</u> at *4. Instead, the Court adjudicated the special-relationship theory based solely on an analysis of the general relationship between an inmate and a prison. <u>Id.</u> In rejecting the contention that such a relationship was a special relationship, the Court offered the following general guidance: "the provision of … services alone is not sufficient to establish a special relationship for the purposes of NIED" and "even if the purpose of a relationship is to achieve an objective for the benefit of a client, if that objective does not necessarily implicate the client's

emotional wellbeing—even if it has an effect on it—the relationship is not 'special' for purposes of NIED."  Id.

### IV.    The Fifth Cause of Action (Negligent Retention) Must be Dismissed

In its Memorandum, the University argued that Ms. Prasad's negligent retention claim must be dismissed because: (i) it is implausible; (ii) Ms. Prasad failed to allege any facts showing that the University knew or should have known that the employee in question was behaving in a "dangerous or incompetent manner" toward her; and (iii) Ms. Prasad has predicated the claim upon duties imposed by Title IX and not the common law, as required by D.C. law. Memorandum at 13-16.  The Opposition leaves these arguments untouched.

### A.    Ms. Prasad's Claim is Not Plausible

The core of Ms. Prasad's negligent retention claim is that Gabriel Slifka, the Director of the Office of Students Rights & Responsibilities, failed to "follow written university policy," and "failed to investigate and address sexual harassment."  Compl. ¶¶ 142, 145.  Yet, Ms. Prasad's own allegations (as highlighted in her Opposition) show her negligent retention claim to be implausible.[5]

In her Opposition, Ms. Prasad describes the *Sexual Harassment and Sexual Violence Policy* as the "written university procedure" that Mr. Slifka allegedly failed to follow.  See Opposition at 22.  Yet, that very policy (which is incorporated by reference into the Complaint at

---

[5]    Ms. Prasad misplaces reliance on Sparrow v. United Air Lines Inc., 216 F.3d 1111, 1113 (D.C. 2000).  Opposition at 21; see also Opposition at 4.  Sparrow's holding is based in large part on the pleading standard set forth in the United States Supreme Court's now abrogated decision in Conley v. Gibson, 355 U.S. 41 (1957).  See Sparrow, 216 F.3d at 1114 ("[t]he grounds for the district court's dismissal of Sparrow's complaint are inconsistent with Rule 8 and Conley.") Conley had counseled that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley, 355 U.S. at 45–46.  But the Court abandoned such thinking in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  Therefore, Sparrow's articulation of the applicable standard means nothing here.

¶ 99) fatally undermines Ms. Prasad's description, for at least two reasons.  First, although Ms. Prasad asserts that *Mr. Slifka* failed to provide her with written notice of VT's hearing outcome (Compl. ¶¶ 60-62, 99), nowhere does the policy state that Mr. Slifka (or any particular individual) was responsible for providing that notice.  See the University's *Sexual Harassment and Sexual Violence Policy*, which is attached at Exhibit A.[6]  Therefore, although Ms. Prasad has made such an allegation in her Title IX cause of action, Compl. ¶ 180(d), there is an insufficient basis to make the same allegation in a negligent retention claim.[7]

Second, although Ms. Prasad claims that "Mr. Slifka did not take steps to suspend VT," Compl. ¶¶ 38, 41-42, the *Sexual Harassment and Sexual Violence Policy* clearly states that, "[i]n cases involving suspension or expulsion, the Senior Associate Provost and Dean of Student Affairs, in concurrence with the Provost and Executive Vice President for Academic Affairs, will impose sanctions."  See Exhibit A at p. 8.  Accordingly, under the *Sexual Harassment and Sexual Violence Policy*, no one person – certainly not Mr. Slifka -- could have suspended VT, and a negligent retention claim based upon a contrary view must be dismissed.[8]

This case is very much like Chandamuri v. Georgetown University, 274 F. Supp. 2d 71, 78 (D.D.C. 2003).  In Chandamuri, a student brought suit against a university, alleging that the sanction imposed on him for plagiarism was discriminatory and retaliatory.  Id.  Part of the

---

[6]  The Court may properly consider on a motion to dismiss a document referred to in the Complaint and central to Ms. Prasad's claim, even though she failed to attach a copy of it to the Complaint.  Manganaro Corp. v. Jefferson at Penn Quarter, L.P., No. CIV.A. 04-2133 GK, 2005 WL 3273979, at *1 n. 3  (D.D.C. Aug. 9, 2005) (citing Jacobsen v. Oliver, 201 F. Supp.2d 93, 110 (D.D.C.2002)).

[7]  Although Ms. Prasad also alleges that Mr. Slifka failed to connect her with Title IX resources, Opposition at 21, there is no reasonable basis to conclude that the University knew or should have known of his alleged failure.  Moreover, Ms. Prasad has conceded that she was connected with other resources, including but not limited to a Coordinator for Victim's Services at the University, as well as the University police and the local court system.  Compl. ¶¶ 72, 107.

[8]  In fact, as Ms. Prasad has alleged, VT *was* suspended for two years.  Compl. ¶ 62.

student's claim was that the honor council discriminated against him by failing to produce a definition of plagiarism in his disciplinary hearings. Id. at 78. In finding the claim "without merit" the court noted that it was "unmistakably contradicted by the Georgetown documents referenced in his complaint." Id. Likewise, the provisions of GW's *Sexual Harassment and Sexual Violence Policy* render any claim that the University negligently retained Mr. Slifka, despite an alleged failure to follow written university policy, "unreasonable and wholly unsupported by the facts."

### B. There is No Plausible Basis to Impute Knowledge to the University

In its Memorandum, the University cited Alqahtani v. George Washington University No. CIV. 95-803 TFH, 1996 WL 568843, at *2 (D.D.C. Mar. 29, 1996) for the proposition that dismissal of a negligent retention claim is warranted when the plaintiff fails to allege any facts supporting a reasonable conclusion that the University knew or should have known of an employee's alleged misconduct. Memorandum at 15. In her Opposition, Ms. Prasad incorrectly suggests that no facts *were offered* to support the Alqahtani plaintiff's negligent retention claim. Opposition at 23. But what the Court actually concluded in Alqahtani was that there were no facts offered "from which to conclude" that the University knew or should have known of the alleged behavior. Alqahtani, 1996 WL 568843, at *4. This distinction is important because the facts "offered" by the Alqahtani plaintiff -- but deemed insufficient by that court to establish knowledge -- are the same as the facts offered by Ms. Prasad here.

 Here, Ms. Prasad claims that the University knew or should have known about Mr. Slifka's alleged misconduct because: (1) she informed "other administrators and employees of GW" of VT's alleged misconduct (notably, *not* of Mr. Slifka's alleged misconduct); and (2) other students at GW had allegedly submitted grievances about Mr. Slifka (an allegation made

16

upon information and belief).  Opposition at 24; see also Compl. at 144 ("upon information and belief").

In Alqahtani, the plaintiff likewise contended that the University knew or should have known about the employee's alleged misconduct because: (1) the plaintiff had informed another university official; and (2) the defendant had subjected other unnamed students to similar discrimination while acting "in concert" with individuals from the Undergraduate Admissions Office, the Office of the Registrar, and the Office of International Student Services.  Id. at *2.  Despite these allegations, this Court in Alqahtani granted the motion to dismiss, noting that it was "not required to indulge the plaintiff's utter speculation as to what might have occurred and who might have been involved."  Id. at *4.

The Court should do the same thing here.[9]  See Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C.C. 1994) ("the Court need not "accept legal conclusions cast in the form of factual allegations.").

### C.    Ms. Prasad Fails to Identify a Common Law Action or Duty

In its Memorandum, the University argued that because Ms. Prasad has not pled a *viable* common law tort claim, her negligent retention claim fails.  Memorandum at 16.  In her Opposition, Ms. Prasad impermissibly attempts to meet that argument by advocating an exception that would all but eliminate the rule.

The University has argued -- and Ms. Prasad has conceded -- that "[a] claim of negligent retention must be predicated on 'common law causes of action or duties otherwise impose [on

---

[9]    In her Opposition, Ms. Prasad appears to recognize that she has offered no basis for her negligent retention claim: in response to a motion to dismiss, she asks for permission to undertake a general search in the hope that some cause of action might be uncovered.  See Opposition at 24 (claiming she needs unidentified "student complaints and other documents.")  But the law does not permit substitution of a fishing expedition for proper allegations in support of a claim.

17

the employer] by the common law.'" Memorandum at 16 (quoting <u>Beyene v. Hilton Hotels Corp.</u>, 815 F. Supp. 2d 235, 252-53 n. 21 (D.D.C. 2011) (citing <u>Griffin v. Acacia Life Ins. Co.</u>, 925 A.2d 564, 576-77 (D.C. 2007)); <u>see also</u> Opposition at 25.  Consistent with this argument, if this Court dismisses the NIED claim, then Ms. Prasad is left without a *viable* common law claim on which to base a negligent retention claim, and the claim must be dismissed.  Memorandum at 16.  That is the law as outlined in <u>Beyene/Griffin.</u>  In her Opposition, in a last-ditch effort to salvage her negligent retention claim, Ms. Prasad appears to suggest that it is sufficient that she *raised* a NIED claim, regardless of whether it survives a motion to dismiss.  Opposition at 25 (contending that her "negligent retention claim is appropriately predicated on the common law tort of Negligent Infliction of Emotional Distress.")  That argument misses the mark.

Likely recognizing that such an argument is unavailing and that dismissal of the negligent retention claim is warranted if the NIED claim does not survive, Ms. Prasad grasps for a common law duty on which to base her negligent retention claim where such a duty simply does not exist.  She posits that a "school has a duty to guard their students against 'foreseeable harm,'" Opposition at 26, and cites <u>Thomas v. City Lights Sch., Inc.</u>, 124 F. Supp. 2d 707, 710 (D.D.C. 2000) in support.  But <u>Thomas</u> addressed the "question of what duty, if any, a school owes *to a member of the public* when taking its students on a field trip."  <u>Id.</u>  Even the court's dicta addressing a school's duty to its students was explicitly limited to the secondary school context.  <u>Id.</u> (noting "[A] secondary school owes a duty to its students 'to exercise reasonable and ordinary care for the protection of pupils to whom it provides an education.'  A school's duty to supervise its students, however, is limited to a reasonable duty to guard against foreseeable harm.")  <u>Id.</u> at 709.  Accordingly, <u>Thomas</u> offers no support for the common law duty for which Ms. Prasad advocates here.

Perhaps appreciating the dearth of case law supporting such a duty in the higher education context, Ms. Prasad argues in a parenthetical that the common law duty required to support her negligent retention claim is present because "*all* persons have a negligence duty to avoid actions and omissions that will foreseeably cause harm."  Opposition at 26 (emphasis added).  To accept this argument and create a rule that all persons in all contexts have such a legal duty would eviscerate Beyene/Griffin and wreak havoc on existing negligence law.  There is no reason to do so in this case.

## CONCLUSION

For all the foregoing reasons, Ms. Prasad's Second, Third, Fourth, and Fifth Causes of Action against the University must be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

/s/ *William D. Nussbaum*
William D. Nussbaum (DC Bar # 941815)
wnussbaum@saul.com
Saul Ewing LLP
1919 Pennsylvania Ave., NW, Suite 550
Washington, DC 20006
(202) 295-6652 telephone
(202) 295-6715 facsimile
*Counsel for Defendant*
*The George Washington University*

19

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of December 2015, a copy of **DEFENDANT THE GEORGE WASHINGTON UNIVERSITY'S REPLY IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS** was served upon the following counsel for plaintiff via the Court's electronic filing system and first-class U.S. mail:

> Daniel Hornal
> Daniel Snow
> Talos Law
> 705 4th Street, NW
> Washington, D.C. 20001
>
> Meghan Boone
> Michael Kirkpatrick
> Institute for Public Representation
> Georgetown University Law Center
> 600 New Jersey Avenue, Suite 312
> Washington, D.C. 20001

/s/ *William D. Nussbaum*
William D. Nussbaum

20