# Exhibit A



| | |
|---|---|
| **THE GEORGE WASHINGTON UNIVERSITY** WASHINGTON, DC | **Responsible University Official**: Vice Provost for Diversity and Inclusion |
| | **Responsible Office**:  Provost and Executive Vice President for Academic Affairs |
| | **Origination Date**:  April 1999 |
| | **Last Amended Date:**  September 30, 2014 |

# SEXUAL HARASSMENT AND SEXUAL VIOLENCE POLICY AND PROCEDURES

## Policy Statement

The George Washington University is committed to maintaining a positive climate for study and work, in which individuals are judged solely on relevant factors, such as ability and performance, and can pursue their activities in an atmosphere that is free from coercion, intimidation and violence. The university mission statement provides that the university "values a dynamic, student-focused community stimulated by cultural and intellectual diversity and built upon a foundation of integrity, creativity, and openness to exploration of new ideas." The university is committed to free inquiry, free expression, and the vigorous discussion and debate on which advancement of its mission depends. Sexual harassment is destructive of such a climate and will not be tolerated in the university community.

## Reason for Policy

This policy document informs members of the university community about sexual harassment, including sexual violence, and explains what they can do if they encounter or observe it in connection with any university program or activity.

## Who Needs to Know This Policy

Faculty, staff, students, visitors to GW campuses, and participants in university programs and activities, both on campus and in other locations.

## Table of Contents                                                 Page

Policy Statement ...............................................................................................1
Reason for Policy...............................................................................................1
Who Needs to Know This Policy.......................................................................1
Table of Contents...............................................................................................1
Policy/Procedures ..............................................................................................2
Website Address ..............................................................................................10
Contacts............................................................................................................10
Related Information .........................................................................................10

SEXUAL HARASSMENT AND SEXUAL VIOLENCE POLICY AND PROCEDURES

Appendices.................................................................................................11
Who Approved This Policy ......................................................................11
History/Revision Dates .............................................................................11

## Policy/Procedures

This policy document is intended to inform members of the university community, including guests and visitors, about sexual harassment, including sexual violence, and the procedures they should follow if they encounter or observe it.

The university prohibits sexual harassment by any student, staff member, faculty member, and others in the university community; encourages reporting of sexual harassment before it becomes severe or pervasive; identifies persons to whom sexual harassment may be reported; prohibits retaliation against persons who bring sexual harassment complaints; assures confidentiality to the extent possible consistent with the need to address and resolve harassment appropriately; assures all members of the university community that each complaint of sexual harassment will receive an adequate, reliable, and impartial investigation; and provides for appropriate corrective action.

The ultimate goal is to prevent sexual harassment through education and the development of a sense of community.  However, if sexual harassment occurs, the university will respond firmly and fairly, and in a timely manner. As befits an academic community, the university's approach is to consider problems within an informal framework when appropriate, but to make formal procedures available for use when necessary.

### What Sexual Harassment Is

The university has adopted the following definition of sexual harassment based on guidance from the Equal Employment Opportunity Commission and Department of Education:

Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when: (1) Submission to such conduct is explicitly or implicitly made a term or condition of academic participation or activity, educational advancement, or employment; (2) submission to or rejection of such conduct by an individual is used as the basis for employment or academic decisions that affect the individual; (3) such conduct has the purpose or effect of unreasonably interfering with an individual's academic or work performance or limiting participation in university programs or activities; or (4) the intent or effect of such conduct is to create an intimidating, hostile, or offensive academic or work environment.  Whether conduct is sexual harassment does not depend on the biological gender of either the victim or the harasser.  Sexual harassment also includes sexual violence, which consists of physical sexual acts (including, for example, sexual assault) that are perpetrated against a person's will or without a person's consent, or when a person is incapable of giving consent due to his or her age, family relation to the other person, the ingestion of drugs or alcohol, or the person's intellectual or other disability.

SEXUAL HARASSMENT AND SEXUAL VIOLENCE POLICY AND PROCEDURES

Depending on the particular circumstances, sexual harassment may include, but is not limited to, the following:

1.  Actual or attempted rape, sexual assault, sexual battery or molestation, without consent or against another's will, whether achieved through force, threat or intimidation, or advantage gained by the aggrieved party's mental or physical incapacity or impairment.

2.  Non-consensual or forcible sexual touching.

3.  Offering or implying an employment-related reward (such as a promotion, raise, or different work assignment) or an education-related reward (such as a better grade, a letter of recommendation, favorable treatment in the classroom, assistance in obtaining employment, grants or fellowships, or admission to any education program or activity) in exchange for sexual favors or submission to sexual conduct.

4.  Threatening or taking a negative employment action (such as termination, demotion, denial of an employee benefit or privilege, or change in working conditions) or negative educational action (such as giving an unfair grade, withholding a letter of recommendation, or withholding assistance with any educational activity) or intentionally making the individual's job or academic work more difficult because submission to sexual conduct is rejected.

5.  Unwelcome sexual advances, repeated propositions or requests for a sexual relationship to an individual who has previously indicated that such conduct is not wanted, unwelcome physical contact of a sexual nature, or sexual gestures, noises, remarks, jokes, questions, or comments about a person's sexuality that are so severe, persistent or pervasive that they would reasonably be perceived as creating a hostile or abusive work or educational environment.  A single incident involving severe misconduct may rise to the level of harassment.

This policy addresses only sexual harassment, including sexual violence, and does not address other forms of gender discrimination.  For other university policies dealing with gender discrimination, contact the university's Title IX Coordinator, (202) 994-7440, diverse@gwu.edu.

Nothing in this policy limits academic freedom, guaranteed by the Faculty Code, which is a pre-eminent value of the university. This policy shall not be interpreted to abridge academic freedom. Accordingly, in an academic setting expression that is reasonably designed or reasonably intended to contribute to academic inquiry, education or debate on issues of public concern shall not be construed as sexual harassment.

A person who commits sexual harassment in violation of this policy will be subject to disciplinary action, up to and including expulsion or termination.

**Assistance for Victims of Sexual Violence**

Members of the university community who are subjected to sexual violence may obtain guidance from GW's Sexual Assault Response Consultative ("SARC") Team.  SARC

SEXUAL HARASSMENT AND SEXUAL VIOLENCE POLICY AND PROCEDURES

Team members are not professional counselors, but they can identify sources of medical, legal, counseling, and academic assistance and explain reporting options both at the university and externally (such as filing a police report).  They can be reached 7 days a week, 24 hours a day, at (202) 994-7222.  More information about the SARC Team is available at http://gwired.gwu.edu/sarcteam.

Students may obtain confidential counseling regarding incidents involving sexual violence from the University Counseling Center ("UCC").  UCC counselors can be reached 7 days a week, 24 hours a day, at (202) 994-5300, option 3.  UCC counselors are licensed professionals, and their communications with individuals they counsel are protected from disclosure under the law.

Members of the university community may obtain further information about resources relating to sexual violence from the university's Title IX Coordinator, (202) 994-7440, diverse@gwu.edu; the Division of Student Affairs, (202) 994-6710, students@gwu.edu; and the university's HAVEN website, http://haven.gwu.edu, a centralized location for information and resources relating to power-based violence, including sexual violence, dating and intimate partner violence, and hate/bias incidents.

The university will provide victims of sexual violence with written notice about existing counseling, health, mental health, victim advocacy, legal assistance, visa and immigration assistance and other services, as well as options and available assistance for changing academic, living, transportation and working situations, if requested, if reasonably available, and regardless of whether reports are made to GWPD or local law enforcement.

Assistance and information relating to incidents involving sexual violence may be obtained from these organizations not affiliated with the university:

*The DC Rape Crisis Center*, (202) 232-0789, (202) 333-RAPE (hotline), http://dcrapecrisiscenter.org  (District of Columbia)

*The Lighthouse Center for Healing*, (202) 742-1720, http://lighthousedc.org (District of Columbia)

*Network for Victim Recovery of DC*, (202) 742-1720, www.nvrdc.org (District of Columbia)

*Sexual Assault Response and Awareness*, (703) 683-7273 (hotline), www.alexandria.gov/women/ (Alexandria, VA)

*Doorways for Women and Families*, (703) 237-0881, www.doorwaysva.org (Arlington, VA)

*Loudoun Abused Women's Shelter,* (703) 777-6552, www.lcsj.org (Loudoun County, VA)

SEXUAL HARASSMENT AND SEXUAL VIOLENCE POLICY AND PROCEDURES

*H.E.R. Shelter for Domestic Violence*, (757) 485-3384 (hotline), http://www.hershelter.com (Portsmouth, VA)

*Victim Assistance and Sexual Assault Program,* (240) 777-1355, (240) 777-4357 (hotline), vasap@montgomerycountymd.gov (Montgomery County, MD)

## Reporting Incidents of Sexual Violence

Members of the university community who are are subjected to sexual violence, or who become aware of others who are, should report the incident(s) to GWPD. Upon request by the individual reporting the incident, the university will allow the report to be made "anonymously," meaning, without including the name of that individual.

To report an act of sexual violence that is occurring or imminent on GW's Foggy Bottom or Mount Vernon campuses or any GW-controlled property in the District of Columbia, call GWPD at (202) 994-6111 or call the Metropolitan Police Department at 911.

If the act of sexual violence is in progress or imminent on any GW campus or property in Virginia or Maryland, dial 911 to reach the local law enforcement agency where the campus or property is located.

To report an act of sexual violence that has ended call GWPD at (202) 994-6110. In the District of Columbia calls may also be made to the Metropolitan Police Department non-emergency line at 311.

Incidents involving sexual violence may be criminal in nature, and members of the university community who have been subjected to it may, if they wish, file reports with local law enforcement authorities. If a member of the university community wishes to notify one or more law enforcement authorities about an act of sexual violence, he or she may obtain assistance from GWPD. Victims of sexual violence may also decline to notify law enforcement authorities if they so choose.

Regardless of whether a report is filed with local law enforcement, individuals should preserve all evidence that could be relevant to any criminal charges that may be brought or that might be needed to obtain a protection order. Individuals who have been subjected to sexual violence are encouraged to obtain a physical examination by a Sexual Assault Nurse Examiner ("SANE"). In the District of Columbia, a SANE exam may be obtained at the Washington Hospital Center ("WHC"), (202) 877-7000, and students at GW's Foggy Bottom and Mount Vernon campuses may contact GWPD at (202) 994-6111 for assistance in obtaining transportation to WHC. In Northern Virginia, a SANE exam may be obtained at INOVA Fairfax Hospital, (703) 776-3199. In Montgomery County, Maryland, a SANE exam may be obtained at Shady Grove Adventist Hospital, (240) 826-6000. In Hampton Roads, Virginia, a SANE exam may be obtained at Sentara Norfolk General Hospital, (757) 388-2443. Before obtaining a SANE examination, individuals should avoid showering, washing, changing clothes, combing hair, drinking, eating or altering their physical appearance. Even if a SANE exam is not sought, all victims of violence should consider obtaining medical attention so that any issues relating to possible injury or disease from the incident may be addressed. GW students may obtain medical attention from the Student Health Service, (202) 994-6827.

SEXUAL HARASSMENT AND SEXUAL VIOLENCE POLICY AND PROCEDURES

Members of the university community who have been victims of sexual violence may apply for civil protection orders from the applicable local court. Information about protection orders and other steps that can be taken in such cases is available from GWPD.

When the university has reason to believe that criminal conduct may have occurred or that action is necessary to protect the health or safety of any individual or to comply with applicable law, the university may refer the matter to appropriate authorities.

The university may also take interim action while incidents involving allegations of sexual violence are investigated and resolved, as appropriate. Interim action may be taken regardless of whether an individual chooses to report an incident to campus police or local law enforcement, and may include interim suspension, removal from university housing, "no contact orders," and/or changing academic, living, transportation or working arrangements for one or more parties. Further information about potential interim actions is available from the university's Title IX Coordinator, (202) 994-7440, diverse@gwu.edu, Division of Student Affairs, (202) 994-6710, students@gwu.edu, and the GW Equal Employment Opportunity Office, (202) 994-9656.

## Consensual Relationships

Relationships that are welcomed by the parties do not entail sexual harassment, and are beyond the scope of this policy. Whether a relationship is in fact welcomed will be gauged according to the circumstances; special risks are involved when one party – whether a faculty member, staff member or student – is in a position to evaluate or exercise authority over the other. It is inappropriate for a faculty member or teaching assistant to have a sexual relationship with a student who is currently in his/her course or is subject to his/her supervision or evaluation. It is similarly inappropriate for someone in a supervisory position to have a sexual relationship with an individual in a subordinate position. Even when both parties previously consented to a sexual relationship, a charge of sexual harassment may be based on subsequent conduct that one of them does not welcome. Members of the university community are cautioned that consensual relationships can in some circumstances entail abuse of authority, conflict of interest, or other adverse consequences that may be addressed in accordance with pertinent university policy and practice.

## Addressing Sexual Harassment

Members of the university community who believe they have been sexually harassed may seek redress through one or more of the following means: consultation, administrative review, and formal hearing. Often, concerns can be resolved through consultation or after administrative review. If the matter is not resolved using these procedures, a formal hearing may be initiated.

Members of the university community who are subjected to conduct of a sexual nature that may be inappropriate (even if the person is unsure whether the conduct constitutes sexual harassment) are encouraged to discuss it with the appropriate department chair, dean, staff supervisor, Senior Associate Provost and Dean of Student Affairs, Title IX Coordinator, or Assistant Title IX Coordinator (see the list under Contacts on page 10).

6

SEXUAL HARASSMENT AND SEXUAL VIOLENCE POLICY AND PROCEDURES

In cases involving allegations of sexual violence, however, discussion with the person who engaged in the conduct is discouraged.  All GW employees who observe conduct of a sexual nature that may be inappropriate must immediately bring it to the attention of one or more of the university officials listed in this paragraph.

I.      Consultation

Any university official or individual with responsibilities under this policy who receives a report of possible sexual harassment shall advise the reporting person of the opportunity to consult with the Assistant Title IX Coordinator for Prevention and Response, at (202) 994-7440, diverse@gwu.edu ("Response Coordinator").  During consultation, the person who alleges sexual harassment will be provided with a copy of the university's Sexual Harassment and Sexual Violence Policy and Procedures, have an opportunity to ask questions, and obtain information about reporting incidents, filing criminal charges, obtaining interim relief, seeking disciplinary action, and obtaining counseling, victim advocacy, legal assistance, health and mental health assistance and other services on campus and in the community.   See Appendix A.

II.     Administrative Review

Any member of the university community who believes that he or she has been sexually harassed by a university employee, student or third party in connection with any university program or activity may file a complaint against that person.  The allegations will receive an adequate, reliable and impartial investigation and an effort will be made to resolve the complaint in accordance with the procedures set forth in Appendix B.

III.    Formal Hearing Procedure

The formal hearing procedure set forth in Appendix C is available when the administrative review procedure fails to resolve a complaint of sexual harassment. The person who made the complaint ("Complainant") or a responsible university official may initiate a formal hearing against the person who allegedly engaged in sexual harassment ("Respondent").  When both the Complainant and the Respondent are students, the procedures set forth in Section 1 of Appendix C will govern the formal hearing procedure.  In all other cases the procedures set forth in Section 2 of Appendix C will govern the formal hearing procedure.

**Outcomes**

When allegations of sexual harassment are addressed through administrative review or the formal hearing procedure, both parties will receive concurrent written notice of the outcome. When either procedure results in a determination that sexual harassment occurred, the findings and recommendations shall be referred to the appropriate university official for imposition of corrective action and sanctions as appropriate.

In cases involving Respondents who are students, any such corrective action or sanctions shall be determined by the Office of Student Rights and Responsibilities. No final sanction may be imposed in such cases based only on administrative review unless the Respondent has consented in writing. In cases involving suspension or expulsion, the Senior Associate Provost and Dean of Student Affairs, in concurrence with the Provost and Executive Vice President for Academic Affairs, will impose sanctions.

In cases involving GW faculty and staff, no final sanction except a written reprimand may be imposed based on an administrative review without the Respondent's written consent. Corrective actions are non-punitive measures that may include, without limitation, training, guidance, adjustment of supervisory or evaluative responsibilities (including administrative leave with full pay and benefits), and measures to protect health and safety. A range of relevant considerations should be taken into account in determining the extent of sanctions, such as the severity of the offense, the effect of the offense on the victim and on the university community, and the Respondent's record of past offenses, if any. Sanctions may include, but are not limited to, a written reprimand, disciplinary probation, suspension, expulsion, or termination of employment; provided that a tenured faculty member may not be dismissed except in accordance with the procedures set forth in Section F of the Procedures for Implementation of the Faculty Code.

The university may impose interim corrective action at any time, if doing so reasonably appears required to protect a member of the university community.

**Redress of Disciplinary Action**

Nothing in this policy or these procedures shall be deemed to revoke any right that any member of the GW faculty or staff may have to seek redress of a disciplinary action, such as a faculty member's right to maintain a grievance under the Faculty Code.

**Confidentiality**

Investigators and decision-makers will strive to maintain confidentiality to the full extent appropriate, consistent with applicable law and the need to resolve matters effectively and fairly and protect the university community. All persons involved in the proceedings will be advised of the need for discretion and confidentiality. Inappropriate breaches of confidentiality may result in disciplinary action.

In some cases Complainants may request that their names be kept confidential during the consultation (Appendix A) and administrative review (Appendix B) stages. The Title IX Coordinator will decide whether to accommodate any such request, and will not do so if, in the judgment of the Title IX Coordinator, it would prevent the university from responding effectively to the incident and protecting other members of the campus community. In such cases the Title IX Coordinator will notify the Complainant before disclosing his or her name. Complainants may renew their request for confidentiality at the formal hearing stage (Appendix C), but will be told that the university's ability to

proceed with the hearing may be limited as a result.  If the Respondent is a member of the GW faculty or staff, the Complainant whose name has been kept confidential will be required to permit its release to the Respondent in order for the Complainant to initiate the formal hearing procedure.

If an individual has requested confidentiality, and the Title IX Coordinator was not able to accommodate that request, and thereafter that individual asks the university to inform the accused person that he or she asked the university not to investigate or seek discipline, the university will honor this request and inform the accused person that the decision to go forward was made by the university itself.

## Retaliation

Retaliation against a person who reports or complains of sexual harassment or provides information in a sexual harassment investigation or proceeding is prohibited by law. Allegations of retaliation will be investigated and may result in disciplinary action, up to and including termination or expulsion.

## False Claims

A person who knowingly makes false allegations of sexual harassment, or who knowingly provides false information in a sexual harassment investigation or proceeding, will be subject to disciplinary action, up to and including termination or expulsion.

## Dissemination of This Policy

The university is committed to preventing and remedying sexual harassment of students, faculty, and staff. To that end, the university has appointed individuals to oversee compliance with applicable federal and local laws, including Title IX, as well as this policy and the procedures described herein.  The Title IX Coordinator will oversee dissemination of this policy and these procedures to the university community.

The university will inform students, faculty, and staff about sexual harassment and the problems it causes.  It will also advise members of the university community of their rights and responsibilities under this policy and these procedures.  It will further provide annual training to university personnel responsible for the administration of this policy and procedures on issues relating to sexual harassment and how to conduct investigations and hearings in a manner that protects the safety of victims and promotes accountability.

## Policy Administration

The university aims to administer this policy in a timely and equitable manner.  While persons alleging sexual harassment are encouraged to come forward without delay, the university may extend any of the time periods set forth herein for good cause or as the circumstances of particular cases warrant.

SEXUAL HARASSMENT AND SEXUAL VIOLENCE POLICY AND PROCEDURES

Unless otherwise stated in text, all time periods expressed in days in the appendices below refer to "business" days, meaning Monday through Friday, inclusive.

The university is committed to identifying, eliminating, preventing and remedying sexual harassment, including sexual violence, in its programs and activities.   Therefore, whenever an incident involving potential sexual harassment is reported on a GW campus or in connection with a GW program or activity – and even if a complaint of sexual harassment has not been filed – the university will conduct an adequate, reliable and impartial investigation of the incident to determine what occurred and, if sexual harassment is found, take steps to eliminate it, prevent it from recurring, and address its effects.

## Website Address

GW University Policies

## Contacts

Title IX Coordinator:

Vice Provost for Diversity and Inclusion    (202) 994-7440         diverse@gwu.edu
Rice Hall, Suite 813
2121 Eye Street, NW
Washington, D.C.  20052

Assistant Title IX Coordinators:

| | | |
|---|---|---|
| Assistant Title IX Coordinator For Prevention and Response | (202) 994-7440 | diverse@gwu.edu |
| Assistant Vice Provost, Faculty Recruitment & Personnel Relations | (202) 994-6783 | abwool@gwu.edu |
| Associate Dean of Students, Administrative Services & Senior Advisor | (202) 994-6710 | kermit@gwu.edu |
| Associate Athletic Director, Education Support Services | (202) 994-2699 | kercole@gwu.edu |

## Related Information

Code of Student Conduct
Equal Employment Opportunity/Affirmative Action Statement
Non-Retaliation Policy
Faculty Code

10

SEXUAL HARASSMENT AND SEXUAL VIOLENCE POLICY AND PROCEDURES

## Appendices

| | |
|---|---|
| **Appendix A** | Consultation Procedure |
| **Appendix B** | Administrative Review |
| **Appendix C** | Formal Hearing Procedure |

## Who Approved This Policy

Louis Katz, Executive Vice President and Treasurer
Steven Lerman, Provost and Executive Vice President for Academic Affairs
Beth Nolan, Senior Vice President and General Counsel

## History/Revision Dates

| | |
|---|---|
| **Origination Date:** | April 1999 |
| **Last Amended Date:** | September 30, 2014 |
| **Next Review Date:** | March 31, 2016 |

SEXUAL HARASSMENT AND SEXUAL VIOLENCE POLICY AND PROCEDURES

## Appendix A

### Consultation Procedure

1. The consultation consists of one or more voluntary meetings between the Response Coordinator and the person who requests the consultation based on one or more instances of a sexual nature that may be inappropriate.

2. During the consultation, a copy of the Sexual Harassment and Sexual Violence Policy and Procedures will be provided and questions about them will be answered. Other matters may also be addressed or clarified, and the person alleging sexual harassment will be offered assistance in developing strategies to deal with the matter, including counseling. The outcome of the consultation may be that no further action is necessary, or the administrative review procedure under Appendix B may be initiated.

3. A record of the consultation will be prepared and maintained. The record will be considered confidential to the full extent consistent with fairness, applicable law, and the university's need to take preventive and corrective action (see also "Confidentiality" above). If the record of the consultation includes an allegation of sexual harassment against a person named in the record, the record will not be disclosed to any person other than the Response Coordinator, the Title IX Coordinator, and the Office of the Senior Vice President and General Counsel, unless the person so named is notified in writing. Absent compelling reason to the contrary, any such notification shall precede the disclosure.

4. When the Response Coordinator has reason to believe that criminal conduct may have occurred or that action is necessary to protect the health or safety of any individual or to comply with applicable law, the university may, as the Office of the Senior Vice President and General Counsel determines, refer the matter to appropriate authorities.

5. Persons who believe they have been subjected to or who otherwise have observed sexual harassment are encouraged to report it and seek assistance from the university promptly. Doing so will enable to university to take action as needed to protect the campus community and facilitate the Administrative Review and Formal Hearing Procedures outlined in Appendix B and C, below.

SEXUAL HARASSMENT AND SEXUAL VIOLENCE POLICY AND PROCEDURES

## Appendix B

### Administrative Review

1. Following consultation, or if consultation is not sought, a member of the university community who believes that he or she has been sexually harassed by a student, university employee or third party may file a complaint against the person believed to have engaged in the harassing conduct.

2. Complaints of sexual harassment by students against other students must be filed with the GW Office of Student Rights and Responsibilities ("SRR"), 2129 I Street, NW, Washington, DC 20052, Tel. (202) 994-6758. All other complaints must be filed with the Response Coordinator, Suite 403, 2121 Eye Street, NW, Washington, DC 20052, Tel. (202) 994-2657.

3. To file a complaint, the Complainant will be asked to provide a signed statement containing a factual account of the alleged harassment. The SRR or Response Coordinator may assist the Complainant in preparing this statement. If the Complainant declines to provide a signed statement, a written summary of the Complainant's oral allegations may be prepared.

4. A complaint of sexual harassment against another person should be filed as soon as possible after the alleged harassment occurs. The university recognizes that victims of sexual harassment may not always file complaints immediately, but notes that its ability to perform an administrative review may be limited by the passage of time.

5. After the complaint is filed, the person who is accused of harassment (the "Respondent") will be provided with a written summary of the material allegations. The Title IX Coordinator will also be informed that the complaint has been filed and provided with the Complainant's signed statement or written summary.

6. The SRR or Response Coordinator will conduct an adequate, reliable and impartial investigation of the alleged harassment, typically within 30 days. Depending on the circumstances, the SRR or Response Coordinator may work with the GW Police Department to conduct the investigation and consult with other university offices with respect to it. The SRR or Response Coordinator will provide the Complainant and the Respondent with similar and timely opportunities to identify witnesses and provide evidence relevant to the complaint, and will advise the parties and any persons interviewed or notified about the alleged harassment of the need for discretion and confidentiality.

7. While the investigation is underway, the university may take interim action in response to the complaint, if appropriate. If the person accused is a student, this action could include interim suspension from the university or removal from university housing. (*See* Section 7 of the Code of Student Conduct for procedures relating to interim suspension.) Steps may also be taken to allow the person making the complaint to minimize or avoid contact with the accused person, change academic

13

SEXUAL HARASSMENT AND SEXUAL VIOLENCE POLICY AND PROCEDURES

or living arrangements for one or both parties, or provide the complaining person with access to counseling, medical or academic support services.

8. After the investigation is completed, the SRR or Response Coordinator will attempt to determine whether an acceptable resolution of the matter may be achieved informally. If the matter involves a Respondent who is a member of the GW faculty or staff, the Response Coordinator will also discuss the matter with the university official who would be responsible for recommending any corrective and/or disciplinary action against the Respondent ("Responsible University Official") and that person will assist in the effort to determine whether the matter may be resolved informally.

9. Informal resolution of a matter could involve corrective action and/or sanctions against the Respondent, or it could involve no further action. Informal resolution of a matter does not involve face-to-face mediation between the parties and either party may end his or her participation at any time. In cases involving Respondents who are members of the GW faculty or staff, no final sanction except a written reprimand may be taken based on an administrative review procedure without the Respondent's written consent. In cases involving Respondents who are GW students, no disciplinary sanction may be imposed based on an administrative review procedure without the Respondent's written consent. Any corrective action or sanction imposed by a Responsible University Official must be within his or her discretion and consistent with his or her authority. The university may also take interim corrective action during this period if doing so reasonably appears to be required to protect a member of the university community.

10. The SRR or Responsible University Official will provide concurrent written notice to the Complainant and Respondent of the outcome of the administrative review procedure, subject to any legal restrictions regarding confidentiality. (See section in Policy entitled "Confidentiality" for limitations on disclosure of information.)

11. If the matter is not resolved informally, the SRR or Responsible University Official shall decide whether to initiate a formal hearing against the Respondent as set forth in Appendix C. The SRR or Responsible University Official may consider the effect of the passage of time before the complaint was filed in making this decision. If the SRR or Responsible University Official decides not to initiate a formal hearing against the Respondent, the Complainant may seek further review as set forth in Appendix C. The university will not proceed with a formal hearing on a complaint of sexual harassment if the Respondent has graduated, otherwise ceased to be an enrolled student, left the university's employ, or is a third party over whom the university has no control.

SEXUAL HARASSMENT AND SEXUAL VIOLENCE POLICY AND PROCEDURES

## Appendix C

## **Formal Hearing Procedure**

### **Section 1 – Students**

1.  If a student's complaint of sexual harassment against another student is not resolved through the administrative review procedure, the SRR will determine, based on the complaint and the investigation, whether to charge the Respondent with violating the GW Code of Student Conduct (the "Code"). SRR will make this determination within 30 days of when it completes the administrative review procedure, and it will communicate its decision in writing to the Complainant and the Respondent. Upon request, SRR will also provide both parties with access to witness statements and documents obtained in connection with the investigation that are relevant to the complaint, to the extent permitted by law.

2.  If a student's complaint of sexual harassment against another student is not resolved through the administrative review procedure, and the SRR decides not to charge the Respondent with violating the Code, the Complainant may appeal that decision by submitting a letter that fully explains all reasons for the appeal to the Response Coordinator, 403 Rice Hall, 2121 I Street, NW, Washington, DC 20052. The appeal must be filed within 5 days of the date the Complainant receives from the SRR notice of the outcome of the administrative review procedure. The SRR will provide the appeal to the Respondent, who shall be permitted to file a response to the appeal within 5 days of when the appeal is received. The Response Coordinator will evaluate the appeal and notify the Complainant and Respondent in writing whether it has been granted or denied. This determination by the Response Coordinator will generally be made within 20 days of when the appeal has been received. That determination is final and may not be further appealed.

3.  Students should be aware that when the Response Coordinator grants an appeal of a decision by the SRR not to charge the other student with violating the Code it does not mean that the student has violated the Code or will be sanctioned. Instead, it means that a charge will now be made and disciplinary proceedings will be conducted on that charge. The student will only be found in violation if the hearing board or conference officer is persuaded by a preponderance of the evidence that the student has committed the violation charged.

4.  If the SRR charges the Respondent with violating the prohibitions in the Code on sexual violence and/or sexual misconduct, *see* Sections 11(a) and (b) of the Code, disciplinary proceedings will be commenced against that student according to the procedures outlined in the Code and in this Section of the Sexual Harassment and Sexual Violence Policy and Procedures. If there is any conflict between the procedures outlined in the Code and the procedures

SEXUAL HARASSMENT AND SEXUAL VIOLENCE POLICY AND PROCEDURES

outlined in the Sexual Harassment and Sexual Violence Policy and Procedures, the latter will govern.

5. In cases where a student has filed a sexual harassment complaint against another student, the Complainant may choose to be a party in the disciplinary hearing or conference conducted on that charge.  In these cases, the Complainant will be given a timely opportunity, similar to the Respondent's, to present and question other witnesses and offer relevant evidence to the hearing board or conference officer.

6. In cases involving charges of sexual violence by one student against another student, neither the Complainant nor the Respondent will be permitted to question the other directly.  Instead, any questions that the Complainant or the Respondent want to ask the other must be written out and provided to the presiding officer, who will read the questions while the party who provided the questions listens from a separate location.  Relevant and probative follow-up questions will also be allowed.

7. In cases involving charges of sexual violence and/or sexual misconduct, the parties will have similar and timely access to witness statements and other documents gathered in connection with the investigation of the complaint that the SRR intends to introduce at the hearing or conference, to the extent permitted by law.  SRR will provide concurrent written notice to the Complainant and Respondent of the outcome of the hearing or conference, and any sanction that has been imposed that relates directly to the Complainant.

8. As a general practice the SRR attempts to complete disciplinary proceedings on charges of sexual violence and/or sexual misconduct within 45 days. However, completing these proceedings may take longer in individual cases, depending on the circumstances involved, the complexity of the facts, the availability of witnesses, and other factors.

9. The parties will have a similar and timely opportunity to appeal the outcome of the disciplinary hearing or conference, to the extent permitted by law, although not the sanction imposed, if any.  Appeals will be conducted according to the procedure outlined in Sections 32 through 35 of the Code of Student Conduct.  As a general practice, the appeal panel will attempt to reach its decision within 45 days from the date the appeal is filed, although additional time may be required in individual cases depending on the circumstances involved, the complexity of the facts, the availability of witnesses, and other factors.  The decision of the appeal panel will be communicated in writing to the Complainant and Respondent within this period. That decision, and  the outcome and sanctions (if any) resulting from any new hearing or conference ordered by the appeal panel in connection with

the appeal shall be final and conclusive and no further appeals will be permitted.

10. All of the time periods discussed in this Appendix C.1. of the Sexual Harassment and Sexual Violence Policy and Procedures and the Code of Student Conduct will be suspended if either the fall or spring semester ends while proceedings on a student's complaint of sexual harassment against another student are pending. Those periods will then resume when the next fall or spring semester begins. In addition, if the university has taken interim steps in response to a complaint of sexual harassment, such as making it possible for a Complainant to minimize or avoid contact with a Respondent, those steps will remain in effect during the suspension period. The university may also take additional interim steps in response to a complaint, if appropriate, during this period.

11. In cases where the university is unable to complete its work within the time periods discussed herein, and believes substantial additional time will be required to do so, it will notify the affected party or parties and explain that further time is required.

12. It is important to note that federal law prohibits unlawful retaliation against any student who files a complaint alleging sexual harassment, participates in an investigation of any complaint alleging sexual harassment, or otherwise asserts the right to an educational environment free of sexual harassment.

## Section 2 – Special Panels

A.    Initiation of Special Panel Procedure

1.     In all cases not covered by Section 1 of Appendix C, if a complaint of sexual harassment is not resolved through the administrative review procedure, either the Complainant or the Responsible University Official may initiate a formal hearing by filing a written request with the Vice President for Human Resources or his/her designee. In such cases the procedures set forth in this Section 2 of Appendix C shall apply, and if there is any conflict between these procedures and the procedures in Section 1 of Appendix C or the GW Code of Student Conduct, the procedures set forth in this Section 2 shall apply.

2.     The written request to initiate a formal hearing must be filed within 30 days after notice is received from the Responsible University Official of the outcome of the administrative review (see Appendix B). The request must include a copy of the complaint, and contain a concise description of the material facts on which the complaint is based, and may include a statement of the relief requested. The Vice President for Human Resources will send copies of the request and the complaint to the Respondent.

17

3.      In Special Panel proceedings the parties include the Respondent, the party who initiated the hearing and, if the hearing was initiated by the Responsible University Official, and the Complainant so chooses, the Complainant.

B.    Establishment of Special Panel Procedures

1.  A formal complaint filed under Appendix C, Section 2, will be heard by a six-member panel selected by lot by the Vice President for Human Resources as described in Section C.  Panelists will be selected from a pool of 18 faculty members, staff, and students appointed for this purpose.  Six faculty members will be appointed by the Provost and Executive Vice President for Academic Affairs, with the concurrence of the Council of Deans and the Faculty Senate Executive Committee.  If the concurrence does not occur within 30 days, the Provost and Executive Vice President for Academic Affairs and the Council of Deans shall select three faculty panel members, and Faculty Senate Executive Committee shall select three additional faculty panel members.  Six staff employees shall be appointed by the Vice President for Human Resources and six student members shall be appointed by the Senior Associate Provost and Dean of Student Affairs.

2.  Each appointee to the pool ordinarily will serve a two year term.  The appointing official should stagger the appointments so that, if feasible, the terms of not more than five of his or her appointees expire in any year.

3.  An appointee to the pool may be removed and replaced at any time, at the discretion of the appointing official.  The appointing official should promptly fill vacancies in the pool according to the procedure in Section B.1 above.

4.  The Vice President for Human Resources or designee will conduct mandatory training of all appointees to the pool at the time of appointment and periodically thereafter.  No pool member shall receive such training while serving on a special panel.  Training will address roles and responsibilities of panel members, hearing procedures, applicable policies, and other techniques and standards pertinent to the formal complaint and hearing process.

C.    Selection of Panel

1.  Within five days after receiving written request to initiate a formal hearing (see A.1 above), the Vice President for Human Resources will select by lot the six-member panel from the pool.  Three panel members will be drawn from the same status group (faculty, staff or student) as the Respondent, and three panel members will be drawn from the same status group as the Complainant. No member of a faculty member's department or of a staff member's administrative department may serve on the special panel.

2.  The Vice President for Human Resources will notify the parties of the panelists' names.  Within three business days of receipt of the notice, any

18

party may submit to the Vice President for Human Resources a written objection to the designation of any panel member. The objection must clearly state the reasons for the objection. The Vice President for Human Resources may, at his or her discretion, replace a challenged panelist with another member of the pool from the same status group.

3. A designated panelist who at any time has or may reasonably be perceived as having a conflict of interest is otherwise unable to serve on a special panel shall recuse himself or herself, and notify the Vice President for Human Resources of the recusal. For sound reasons, which shall be disclosed to the parties and panel members, the Vice President for Human Resources, in his or her discretion, may replace a panel member. The successor panel member shall be selected by lot by the Vice President for Human Resources from among pool members of the recused or replaced panel member's status group.

D. Special Panel Organization

1. Within five days after their appointment, special panel members will select a chairperson and review the request for a hearing.

2. The special panel may request clarification or additional information from the Vice President for Human Resources or the parties. Panel members may not communicate with any party regarding the complaint or the hearing except in the presence of all other parties. The special panel shall provide all parties with copies of all written communications sent to any party.

E. Scheduling Hearing

1. The special panel will set a hearing date and time. The panelists will meet within a reasonable time, normally with five days after their appointment, to select a chairperson and set the hearing date and time. The hearing will be held within a reasonable time, normally within 20 days after the special panel is appointed.

2. The special panel chairperson will notify the parties of the hearing date, time, and location at least ten days before the hearing. Within two days after receiving notice of the hearing, a party with a scheduling conflict may submit to the chairperson a request for postponement. The chairperson, after consulting the special panel members, has discretion to reschedule the hearing. All parties will be notified as soon as feasible if the hearing is rescheduled.

3. If a party does not appear for the hearing within 30 minutes after the scheduled time, the special panel will decide whether to reschedule the hearing or proceed.

SEXUAL HARASSMENT AND SEXUAL VIOLENCE POLICY AND PROCEDURES

4. The parties will be provided similar and timely access to witness statements and other documents gathered in connection with the investigation of the complaint, to the extent permitted by law.

F. Conduct of Hearing

1. The special panel chairperson will preside at the hearing and decide procedural issues. Only the parties and other persons participating in the proceeding may be present during the hearing except as otherwise provided in these procedures. The hearing will be conducted in the following sequence:

   a) Preliminary matters. The Chairperson will introduce the parties, their advisors, and the special panel members; review the order of proceedings; explain procedures pertaining to audio recording; and present a brief summary of the formal complaint.

   b) Opening statements. The party who initiated the hearing may make an opening statement. If the hearing was initiated by the Responsible University Official, this statement may consist of or include a statement from the Complainant if the Complainant so chooses. The Respondent may then make an opening statement. Each opening statement shall not exceed 15 minutes.

   c) Presentation of formal complaint. The party who requested the hearing may present to the panel testimony, witnesses, documents or other evidence. As part of this presentation, if the hearing was initiated by the Responsible University Official, the Complainant may also present testimony, witnesses, documents or other evidence. The Respondent may ask questions of each witness.

   d) Response to formal complaint. The Respondent may present testimony, witnesses, documents or other evidence to the panel. The party who initiated the hearing and, if the hearing was initiated by the Responsible University Official, then the Complainant, may ask questions of each witness. In cases involving allegations of sexual violence, the special panel typically does not allow the Complainant and the Respondent to question or cross-examine each other directly during the hearing, and instead requires that such questioning be conducted indirectly and/or from a separate location.

   e) Closing statements. The party who initiated the hearing may make a closing statement. If the hearing was initiated by the Responsible University Official, this statement may consist of or include a statement from the Complainant if the Complainant so chooses. The Respondent may then make a closing statement. Each closing statement shall not exceed 15 minutes.

20

SEXUAL HARASSMENT AND SEXUAL VIOLENCE POLICY AND PROCEDURES

2. Special panel members may ask questions of parties or witnesses at any time during the hearing.

3. The hearing will not be conducted according to strict rules of evidence. However, the special panel chairperson may limit or exclude irrelevant or repetitive testimony, and may otherwise rule on what evidence may be offered.  To determine whether a persistent pattern of sexual harassment exists, if relevant, the special panel may request that appropriate university officials (in consultation with the Office of the Senior Vice President and General Counsel) provide information (subject to university policies and applicable laws, including the privacy of student education records) of prior written reprimands and/or sanctions imposed against the Respondent based on past incidents of sexual harassment.

4. When the hearing cannot be completed in one session, the special panel chairperson may continue the hearing to a later date and time.

5. The hearing will be audio recorded.  Either party may obtain from the Vice President for Human Resources a copy of the recording at reasonable cost, on written request, if permitted by law.

G.    Witnesses

1. Each party (and the panel) may ask witnesses to testify at the hearing, but no person may be compelled to testify.

2. At least three days before the hearing, each party must provide the chairperson, the Vice President for Human Resources and all other parties a list of witnesses that he or she intends to present at the hearing, as well as the contents and names of the authors of any written statements that he or she may introduce at the hearing.  Parties shall have the right to rebut any unfavorable inferences that might be drawn from any such statements that are introduced.

3. The special panel may ask that additional witnesses appear and testify at the hearing.  The Vice President for Human Resources will ask each such person to appear, if reasonably possible.

4. Each party is responsible for notifying its witnesses of the hearing date, time, and location.  A hearing will not necessarily be postponed because a witness fails to appear.

5. In identifying persons to appear as witnesses, parties should be aware that live testimony is preferred and that the panel may give less weight to the written statement of a witness who is able but unwilling to appear.

21

SEXUAL HARASSMENT AND SEXUAL VIOLENCE POLICY AND PROCEDURES

6. All witnesses (except for the Complainant and the Respondent) will be excluded from the hearing before and after their testimony. A witness may be recalled at the discretion of the special panel chairperson.

7. A university employee must obtain permission from his or her supervisor to be absent from work to appear at a hearing. Employees will be paid for reasonable time spent while preparing for or appearing at a hearing during working hours, but not for other time spent on the complaint outside working hours.

8. A student must obtain permission from his or her professor to be absent from class to appear at a hearing.

9. Supervisors and professors should be aware of the importance of hearings and not unreasonably withhold permission to appear at a hearing. If an employee or student needs assistance in obtaining permission to appear at a hearing, he or she should contact the Vice President for Human Resources.

H.   Advisors

1. Each party may be accompanied by an advisor, who may be university employee, an attorney, or another person the party selects.

2. No advisor, including without limitation an attorney who is acting as an advisor, may speak on behalf of the party, make an opening or closing statement, present testimony or examine witnesses. The advisors' role is limited to assisting the party prepare for the hearing and providing the party private advice during the hearing.

3. A party who plans to be accompanied by an advisor during a hearing must notify the panel chairperson and the other hearing participants at least five days before the hearing, providing the name of the advisor and stating whether that person is an attorney.

4. The special panel may request or the university may provide a university-furnished attorney or other advisor to be present at any hearing to advise the special panel.

5. The university may have an observer present at the hearing.

I.   Decision After Hearing

1. After the hearing, the special panel will meet in closed session to review the hearing and make a decision on the formal complaint. In order to make a determination that sexual harassment occurred the decision must be supported by a preponderance of the evidence and approved by a majority of the special

22

panel members.  A preponderance of the evidence means that it is more likely than not that sexual harassment or violence occurred.

2. The special panel's report of its decision must be in writing and set forth findings of fact, conclusions, and, where appropriate, recommendations for corrective action, including sanctions, that are approved by a majority of the special panel members.

3. The special panel will submit the report of its decision to the Vice President for Human Resources within ten days after the hearing ends.  The Vice President for Human Resources will send a copy of the special panel report to the Complainant and the Respondent (at their home addresses of record, by courier, overnight mail or certified mail, return receipt requested) except for portions that the university is required by law to treat as confidential.  The Vice President for Human Resources shall also send copies of the special panel report to the Responsible University Official, including the vice president(s) responsible for oversight of the status group(s) to which the Complainant and Respondent belong.

4. If the special panel concludes that sexual harassment occurred, the Vice President for Human Resources will forward a copy of the special panel report to the Responsible University Official or SRR. After reviewing the special panel report, the Responsible University Official or SRR will decide whether to impose corrective action, including sanctions, consistent with that official's authority.  In cases involving suspension or expulsion of a student, the Senior Associate Provost and Dean of Student Affairs, in concurrence with the Provost and Executive Vice President for Academic Affairs, will impose sanctions.  The Responsible University Official will provide concurrent written notice to the Complainant and the Respondent of the outcome of the complaint.

5. As a general practice, the panel will render a decision on a formal complaint within 45 days of when the Vice President for Human Resources receives it. However, certain cases may require additional time, depending on the circumstances involved, the complexity of the facts, the availability of witnesses, and other factors.  In cases where a special panel is unable to complete its work within this period of time, and believes substantial additional time will be required, it will notify the affected party or parties and explain that further time is required.

J.    Review of Special Panel Decision

1. A party dissatisfied with a special panel decision may submit a request for review to the Vice President for Human Resources, who will transmit the request to the university Vice President(s) responsible for oversight of the status groups to which the parties belong.  For example, when the Complainant is a staff member and the Respondent a faculty member, the

23

Vice President for Human Resources and the Provost and Executive Vice President for Academic Affairs will jointly review the matter; when Complainant and Respondent are both faculty members, the Provost and Executive Vice President for Academic Affairs will review the matter.

2. The request for review must be in writing and set forth reasons why the special panel decision should be modified or overturned. The request for review must be based on the hearing record and may not present new evidence or testimony.

3. The request for review must be submitted within 10 days after notice is provided of the special panel decision. If the request is not received by then, the special panel decision will be the final university decision on the formal complaint.

4. The Vice President(s) will strive to issue a final decision on the review, based on the hearing record, within 30 days following submission of the request for review. The decision of the Vice President(s) shall be the final decision on the formal complaint within the university.

5. When a special panel decision that includes a finding of sexual harassment is final, or when the final decision on a review is issued, the Vice President for Human Resources will provide a copy of it to the Responsible University Official or SRR. Any corrective action, including sanctions, taken shall be within the discretion and consistent with the authority of that official. In cases involving suspension or expulsion of a student, the Senior Associate Provost and Dean of Student Affairs, in concurrence with the Provost and Executive Vice President for Academic Affairs, will impose sanctions. A range of relevant considerations should be taken into account in determining the extent of sanctions, such as the severity of the offense, the effect of the offense on the victim and on the university community, and the Respondent's record of past offenses, if any.

6. The Responsible University Official shall send a copy of the final decision to the Complainant and the Respondent (at their home address of record, by courier, overnight mail or certified mail, return receipt requested) except for portions that the university is required by law to treat as confidential.