# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RICCA PRASAD, | |
| **Plaintiff,** | |
| v. | **Civil Action No.**<br>**1:15-cv-01779 (ABJ/GMH)** |
| THE GEORGE WASHINGTON UNIVERSITY, | |
| **Defendant.** | |

## MEMORANDUM OPINION AND ORDER

Ricca Prasad ("Plaintiff") was a student at George Washington University ("Defendant" or the "University") between September 2010 and May 2015. She alleges that she suffered sexual abuse and harassment at the hands of another student during that period, and that Defendant failed to meet its responsibilities under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, failed to provide her with promised protections, negligently inflicted emotional distress, and negligently retained one of its employees involved in the University's disciplinary processes.

The matter was referred to the undersigned for the resolution of ongoing discovery disputes in June 2017. Minute Order dated June 2, 2017. Plaintiff challenges Defendant's search of its electronically stored information ("ESI") for discoverable information and the extent of its redactions to documents produced in discovery. For its part, Defendant asserts that its searches for responsive material was reasonable and that further searches would impose an undue burden and would be disproportionate to the needs of this case. Defendant also questions the relevance of one of Plaintiff's requests for production and the breadth of a Rule 30(b)(6) deposition notice she issued.

Upon consideration of the parties' filings, their representations during discovery hearings held on September 8 and 25, 2017, and the entire record herein,[1] the Court finds that Defendant's search and production in response to the discovery requests at issue were reasonable. The Court further finds that Plaintiff's 30(b)(6) notice is overbroad, duplicative, and cumulative. Accordingly, the Court will not compel Defendant to undertake further searches of its ESI or other records or to produce an individual to be deposed in response to Plaintiff's 30(b)(6) notice as presently drafted. Finally, the Court finds that the parties largely resolved the redaction issue on the record during the September 8, 2017 discovery hearing. The parties shall resolve any remaining issues as to the proper scope of redactions in accordance with the protective order governing discovery in this matter without further assistance from the Court. However, Defendant shall produce an unredacted copy of the document identified as AA0001930-34 forthwith.

## BACKGROUND

According to the Complaint, Plaintiff was enrolled as a student at George Washington University from September 2010 through May 2015. Compl. at ¶ 8. She filed an incident report with the George Washington University Police Department in January 2012, alleging that a fellow student had abused and harassed her. *Id.* at ¶¶ 9, 13. In the ensuing days, Plaintiff communicated with Defendant's Office of Student Rights and Responsibilities ("OSRR"), which issued a "No Contact Order." *Id.* at ¶¶ 19–22. When Plaintiff and her alleged abuser agreed to rescind the order approximately one year later, the harassment recommenced, culminating in a March 2013 incident

---

[1] For the purposes of this Memorandum Opinion and Order, the most relevant docket entries are: (1) Complaint for Declaratory, Injunctive and Compensatory Relief ("Compl.") [Dkt 1]; (2) Plaintiff's First Set of Requests for Production of Documents ("Requests") [Dkt 39-1 at 3–9]; (3) Plaintiff's Requests for Production of Documents No. 27 ("Request 27") [Dkt. 39-1 at 11–13]; (4) Plaintiff's First Set of Interrogatories ("Interrogatories") [Dkt. 39-1 at 15–25]; (5) Plaintiff's Notice of Deposition of the George Washington University ("Deposition Notice") [Dkt. 39-1 at 27–30]; (6) Joint Submission of the Parties Outlining the Remaining Discovery Disputes ("Joint Report I") [Dkt. 41]; and (7) Joint Report of the Parties Addressing Remaining Discovery Issues ("Joint Report II") [Dkt. 44]. All citations to page numbers within a particular document are to the ECF docket page numbers for the document.

in which he allegedly physically attacked her.  *Id.* at ¶¶ 25–32.  A new No Contact Order issued, and Plaintiff met with Gabriel Slifka, the director of OSRR, to discuss the incident and possible discipline.  *Id.* at ¶¶ 34, 37–43.  The threats allegedly continued, however, and official disciplinary proceedings were initiated against the student in May 2013.  *Id.* at ¶¶ 45–47, 57.  Following a disciplinary hearing that same month, Defendant suspended the student for two years.  *Id.* at 57, 62.  Plaintiff alleges on information and belief that in May 2013 the University nevertheless awarded an undergraduate degree to the student who abused her.  *Id.* at ¶ 97.  Plaintiff continued at the University in pursuit of a graduate degree.  *Id.* at ¶ 70.  She alleges that the harassment by the other student continued, notwithstanding her subsequent police reports and contacts with OSRR.  *Id.* at ¶¶ 65–68, 80, 91–94.

Plaintiff filed this action in October 2015.  Two claims are particularly relevant here.  First, Plaintiff alleges that Defendant responded unreasonably to her reports of harassment by, for example, failing to follow its own stated procedures for handling sexual harassment complaints, failing to enforce its No Contact Orders, and failing to comply with its own disciplinary measures by awarding her alleged harasser a degree.  *Id.* at ¶ 108.  Second, Plaintiff asserts that Defendant harmed her by allowing Mr. Slifka's employment at OSRR to continue in the face of knowledge that he had failed to follow University procedures in connection with sexual harassment complaints in the past.[2]  *Id.* at ¶¶ 142–146.

The Court entered a scheduling order and the parties' joint proposed protective order at the end of July 2016.  [Dkts. 20, 23].  Almost immediately thereafter, the Court entered an order outlining the process for discovery of education records covered by the Family Education Rights and

---

[2] The Complaint also alleges that Defendant (1) breached a contract of which Plaintiff was a third-party beneficiary by allowing her alleged harasser to graduate notwithstanding his violation of a No Contact Order and (2) negligently inflicted emotional distress upon Plaintiff.  *Id.* at ¶¶ 112–122, 130–138.  A claim for equitable estoppel was dismissed in June 2016.  Dkt. 15 at 3–4.

Privacy Act ("FERPA"), 20 U.S.C. § 1232g, which prohibits disclosure of personally identifiable information from the education records of current and former students of federally-funded schools. Order dated Aug. 1, 2016 [Dkt. 24]. Plaintiff propounded her first set of Interrogatories and Requests for Production in August 2016. Defendant began searching its ESI for responsive information and produced its first documents in September 2016. Letter of Christina D. Riggs dated May 12, 2017 [Dkt. 34 at 4]. The Court held a discovery conference in November 2016 and ordered production of documents to continue on a rolling basis. On December 19, 2016, after a conference among counsel, Plaintiff served another set of Requests for Production, comprising a single request. Request 27 at 2; Joint Report I at 13.

As discussed in more detail below, the parties exchanged a series of meet-and-confer letters between December 2016 and May 2017, and the Court held conferences regarding discovery disputes in February and April. On May 12, 2017, each side filed a letter with the Court discussing their outstanding discovery disputes, which the Court later ordered to be entered on the public docket. [Dkts. 34, 39]. On June 2, 2017, the Court referred the matter to the undersigned for resolution of the remaining discovery disputes.

## LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351(1978); *see also Food Lion, Inc. v. United Food & Commercial Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007,

1012 (D.C. Cir. 1997) ("Generally speaking, 'relevance' for discovery purposes is broadly construed.").

However, "the relevance standard of Rule 26 is not without bite," and will not allow "explor[ation] [of] matter which does not presently appear germane on the theory that it might conceivably become so." *Food Lion*, 103 F.3d at 1012 (quoting *In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975)). Moreover, the rule was amended in 2015 to emphasize the need for proportionality in discovery and to "encourage judges to be more aggressive in identifying and discouraging discovery overuse." FED. R. CIV. P. 26(b)(1) advisory committee's note to 2015 amendment. It therefore directs courts to consider such factors as the importance of the issues raised in the action, the amount in controversy, the parties' access to the requested information, the parties' resources, the importance of the requested discovery to the case, and "whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1); *see also, e.g.*, *Oxbow Carbon & Minerals LLC v. Union Pacific Railroad Company*, No. 11-cv-1049 (PLF/GMH), 2017 WL 4011136, at *3 (D.D.C. Sept. 11, 2017). Indeed, "all discovery is subject to the balancing test . . . that requires a court to limit the discovery 'otherwise allowed by these rules' if the burden outweighs its likely benefit." *Intervet, Inc. v. Merial Ltd.*, 252 F.R.D. 47, 49 (D.D.C. 2008).

While the initial responsibility of establishing relevance lies with the party seeking the information, "the burden is on the refusing party to show that the movant's request is burdensome, overly broad, vague or outside the scope of discovery." *United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 33 (D.D.C. 2012); *see also Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15 Civ. 0293, 2016 WL 3906712, at *3 (S.D.N.Y. July 14, 2016) ("In general, when disputes are brought before the court, the parties' responsibilities remain the

same as they were under the previous iteration of the rules, so that the party resisting discovery has the burden of showing undue burden or expense.").

**DISCUSSION**

The parties' recent submissions outlined five points of contention. One of these—Defendant's production of communications between members of the fraternity of the student who assaulted Plaintiff—has been resolved entirely. Another—the extent of the redactions in Defendant's production—has largely been settled, but will be addressed briefly below. The remaining disputes concern Defendant's electronic searches for responsive information in response to Plaintiff's Interrogatory 14 and Requests for Production 7 and 15; Plaintiff's Request for Production 27, which seeks other complaints about the procedures Defendant has followed in connection with other students' sexual harassment allegations; and Plaintiff's Rule 30(b)(6) deposition notice of March 2017. The Court concludes that there is insufficient basis to compel Defendant to perform further searches to respond to Interrogatory 14 or Requests for Production 7, 15, or 27, or to require Defendant to respond to Plaintiff's deposition notice as currently drafted.

**A.      Interrogatory 14, Requests for Production 7 and 15**

In Interrogatory 14, Plaintiff asks Defendant to

[i]dentify all formal or informal grievances, complaints, or concerns submitted or otherwise transmitted to any [University] employee or agent by any person, including but not limited, to other [University] employees or agents, [University] students, [University] alumni, or parents of [University] students, concerning or otherwise referring to Gabriel Slifka.

Interrogatories at 23. In Request for Production 7, Plaintiff asks Defendant to

provide all documents that refer to any written feedback or disciplinary actions taken against Gabriel Slifka, including but not limited to: all performance evaluations, student complaints, or supervisory notes, from the date of his hire by [the University] to the present.

Requests at 6. In Request for Production 15, Plaintiff asks Defendant to

provide all documents that contain or refer to all formal or informal grievances or complaints submitted or otherwise transmitted to any agent or employee of [the University] by [University] students, [University] alumni, or parents of [University] students concerning or otherwise referring to Gabriel Slifka. This request includes any reports or summaries of student complaints.

*Id.* at 7–8.

The parties began debating the scope of these requests almost at the outset of discovery. Defendant initially construed these requests narrowly to include only complaints about Mr. Slifka in his personnel file. Joint Report I at 8. In response to Plaintiff's objection to this scope, Defendant produced Mr. Slifka's entire performance evaluation file and expanded its search to attempt to capture any mention or discussion of complaints against him. *Id.* at 8–9. It also broadened the scope of the search to include emails in the accounts of Mr. Slifka's supervisors. *Id.* at 9. Plaintiff continued to object to the scope of Defendant's search and, in the November 2016 discovery conference, the Court ordered Defendant to search the files of the Dean of Students, the Title IX Office, and the Office of General Counsel. Defendant complied and also searched the files of four other offices likely to receive complaints—the Division of Human Resources, the Office of the Executive Vice President and Provost, OSRR, and the Office of Student Support and Family Engagement. *Id.* Ultimately, the search included the physical files of these seven offices and the email accounts of thirty current and former employees. *Id.* at 8; Joint Report II at 3–4.

In performing the searches for ESI responsive to these requests, Defendant utilized root expanders and proximity searches in tandem. A root expander (here denoted by an asterisk) functions to capture variants of a root term, so, for example, the search term "violat*" would capture the root "violat" with all possible endings, such as "violate," "violated," or "violation." Proximity searches allow a search specifying how close within a record multiple search terms should be. Defendant searched the University's email database for variations of Mr. Slifka's name (Slifka, Gabriel, or Gabe) within 30 words of the following disjunctive list of terms:

> complaint* or grievance* or concern* or violat* or callous or disregard or insensi-
> tive or demand* or misconduct or victimiz*

Joint Report I at 8–10.  In addition to that search, Defendant searched Mr. Slifka's email for all variants of the roots "complaint" or "grievance" (*i.e.* complaint* or grievance*) with no proximity parameter.  Joint Report II at 3.  For the electronic files of Mr. Slifka's supervisors, co-workers, and subordinates, Defendant searched for variants of Mr. Slifka's name within ten words of the terms "complaint" or "grievance."  *Id.*  The files of the Assistant Director for Sexual Assault Prevention and Response and of the former Executive Director and Founder of the Office of Parent Services were searched for all emails containing the terms "Gabriel" or "Slifka."  *Id.* at 4.  Review of the emails of a different University student connected with this matter sought variations of Mr. Slifka's name, Plaintiff's name or email address, the accused harasser's name or email address, and the names of other University students alleged to have made complaints about Mr. Slifka.  *Id.*  All told, those searches yielded 7,957 documents.  Of those documents, only twenty-seven were responsive to Interrogatory 14 and Request for Production 15.[3]  *Id.* at 4 n.1.  Defendant estimates that the process of searching for, reviewing, and producing those documents took between 150 and 225 hours and cost between $75,000 and $100,000.  Joint Report II at 3.

To be adequate under the Federal Rules, a search in response to a discovery request must be reasonable.  *See, e.g.*, *Moore v. Napolitano*, 723 F. Supp. 2d 167, 173 (D.D.C. 2010) ("[A] party is obligated to make a reasonable effort to search for and produce documents responsive to the opposing party's document requests.  'Ultimately, what is reasonable is a matter for the court to

---

[3] Specifically, Defendant identifies three "core" email chains and 24 offshoots of those email chains.  *Id.* at 4 n.1. As to Request for Production 7, at the September 8 conference, Plaintiff acknowledged that she had received Mr. Slifka's personnel file and that any other documents conceivably encompassed within that request were also included in Interrogatory 14 and Request for Production 15.  Unofficial Transcript dated Sept. 8, 2017 ("Transcript") at 3–4.

decide on the totality of the circumstances . . . .'" (quoting FED. R. CIV. P. 26(g) advisory committee's note to 1983 amendment)); *see also Agerbrink v. Model Service LLC*, No. 14 Civ. 7841, 2017 WL 933095, at *5 (S.D.N.Y. Mar. 8, 2017) ("The standard for evaluating discovery is reasonableness, not perfection.") (collecting cases); *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 615 (C.D. Cal. 2013) ("[W]hile parties must impose a reasonable construction on discovery requests and conduct a reasonable search when responding to the requests, the Federal Rules do not demand perfection."). Defendant accomplished that here. Although it originally placed a rather crabbed construction on these discovery requests, Defendant repeatedly expanded its search in response to concerns of Plaintiff and the Court. Indeed, it broadened the custodians to be searched to University offices and personnel beyond those that the Court ordered during the November 2016 conference. Ultimately, Defendant fashioned a set of search terms reasonably calculated to retrieve the information responsive to Plaintiff's requests.

Plaintiff asserts that Defendant's search uncovered only complaints made by students whom she herself had identified during discovery, and calls this result "implausible." Joint Report I at 3–4. However, "[d]iscovery to pursue a suspicion or a hunch is unwarranted." *Physicians Committee for Responsible Medicine v. Glickman*, 117 F. Supp. 2d 1, 4 (D.D.C. 2000). She further points to an assertedly responsive email sent by a student to a University employee that Defendant produced only in the form of a copy forwarded to Plaintiff, rather than in its original iteration. Joint Report I at 4 n.2. But Defendant's search did produce the substance of the email, even if it did not turn over the original email. In any case, this single example is not sufficient indication of an inadequate search. *See Reinsdorf*, 296 F.R.D. at 615 ("[T]he Federal Rules do not demand perfection.").

Nevertheless, in its written submissions (as well as at the September 8 hearing), Plaintiff requests that the Court order Defendant to perform a new search with broader terms (such as "complain*" rather than "complaint*") and a more generous proximity specification (permitting hits on search terms within 60 words rather than 30 words of variants of Mr. Slifka's name). Joint Report I at 6. That request is denied. "[I]t is not the court's role to dictate how a party should search for relevant information absent a showing that the party has abdicated its responsibility." *Agerbrink*, 2017 WL 933095, at *5; *see also* The Sedona Conference, *The Sedona Principles, Third Ed.: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1, 118 (forthcoming 2018), *available at* https://thesedonaconference.org/publication/The%20Sedona%20Principles ("[A] responding party is best situated to preserve, search, and produce its own ESI. [This] [p]rinciple . . . is grounded in reason, common sense, procedural rules, and common law, and is premised on each party fulfilling its discovery obligations without direction from the court or opposing counsel . . . unless a specific deficiency is shown in a party's production."). Defendant has not made such a showing here.

More importantly, the burden of that search outweighs its likely benefit. The searches already performed resulted in a miniscule rate of responsiveness: Defendant estimates approximately one-third of one percent of the documents that the searches identified were determined to be responsive to the requests at issue. Joint Report II at 4 n.1. Stated another way, over 99.5% of the documents gathered using Defendant's search terms were "false hits," *i.e.*, documents that the search terms "hit on" but which were in fact deemed non-responsive to Plaintiff's discovery requests. Tweaking Defendant's search parameters—for example, seeking documents including a variation of Mr. Slifka's name within 60 words of the search term "complain*" rather than "complaint*"—would certainly increase the number of documents collected, perhaps significantly, but

there is no reason to expect that the responsiveness rate would rise meaningfully.[4]  This might be a function of the fact that the use of electronic search terms is simply not an efficient way to find information responsive to these requests.   Fortunately, Plaintiff has already taken advantage of other, arguably more efficient, ways to explore substantive complaints against Mr. Slifka by reviewing his personnel file and by deposing Mr. Slifka and two of his supervisors.  Joint Report I at 8.  In any case, Defendant estimates that completing the proposed search would require over 150 hours of work at a cost of between $75,000 and $90,000.  This is an outsized price tag for such a doubtful payoff.

To be sure, the efficiency and procedural fairness of the process by which schools receiving federal funding investigate allegations of sexual harassment and assault is an important issue.  And Defendant has not argued that the cost of the proposed discovery would be prohibitive.  *See, e.g.*, *In re Symbol Techs., Inc. Sec. Litig.*, No. 05 CV 3923, 2017 WL 1233842 (E.D.N.Y. March 31, 2017) (taking into account whether cost of production was prohibitive); *DeAngelis v. Corzine*, Nos. 11 Civ. 7866, 12 MD 2338, 2015 WL 195815, at *2 (S.D.N.Y. Jan. 15, 2015) (same).  But in light of the search already performed and the discovery already taken, Plaintiff's costly proposed search, with its questionable efficacy, is disproportionate to the needs of the case.

Plaintiff also raises more targeted objections to Defendant's responses to these discovery requests.  She complains that Defendant's searches focused on Mr. Slifka, rather than including, for example, the term "Office of Student Rights and Responsibilities."  Joint Report I at 6.  However, the discovery requests, like Plaintiff's negligent retention claim, do not refer to the office as

---

[4] Assuming an average sentence length of 20 words, the proposed search would gather all variants of the root "complain" appearing within three sentences (or more, depending on the position of the terms) of a variant of Mr. Slifka's name.  Like the original search, that is likely to capture a large number of "false hits."

a whole or any other personnel; they name only Mr. Slifka.  Additionally, Plaintiff has not pre-sented a factual basis for her assertion that Mr. Slifka was the "only meaningful member" of OSRR.  Joint Report I at 6.  Rather, at the September 8 conference, counsel for Defendant contra-dicted that representation.  Transcript at 23.  Indeed, expanding the search in this manner would likely retrieve even more non-responsive information.  Defendant's construction of these discov-ery requests to focus on Mr. Slifka was reasonable.  *See, e.g.*, *Reinsdorf*, 296 F.R.D. at 615 ("[P]art-ies must impose a reasonable construction on discovery requests . . . .").

Similarly reasonable was Defendant's decision to limit its search to the period between September 2010 and May 2015, that is, the period during which Plaintiff attended the University.  Both the Requests for Production and Interrogatories define the "Relevant Period" as "September 2010 through May 2015, unless otherwise specified."  Requests at 2; Interrogatories at 2.  Neither Interrogatory 14 nor Request for Production 15 "specifie[s]" any time period.  Requests at 15; Interrogatories at 14.  In contrast, Request for Production 7 asks for written records of disciplinary actions against Mr. Slifka "from the date of his hire by [Defendant] to the present."[5]  Requests at 4.  Given that Plaintiff knew how to specify a period of time different from the Relevant Period when she wanted to, Defendant's interpretation of the temporal limitation in these requests was unobjectionable.  Moreover, to the extent that the time period covered by the requests was ambig-uous, Plaintiff, as the drafter, must bear the consequences of that vagueness.  *See, e.g.*, *Talley v. United States*, 990 F.2d 695, 699 (1st Cir. 1993); *Ortho Diagnostic Sys. Inc. v. Miles Inc.*, 865 F. Supp. 1073, 1079 (S.D.N.Y. 1994).

---

[5] Consistent with the language of this request, Defendant has produced Mr. Slifka's entire personnel file, regardless of the date of the records contained therein.  Joint Report I at 8; Transcript at 4.

Finally, Plaintiff disapproves of Defendant's decision to exclude as non-responsive documents protesting only the outcomes of other harassment investigations. Joint Report at 10; Transcript at 18. The Complaint (including the cause of action pursuant to Title IX and the negligent retention count regarding Mr. Slifka) focuses on alleged deficiencies in the *process* of investigating and adjudicating Plaintiff's claim. Compl., ¶¶ 108, 142, 145. Plaintiff does not disagree with the verdict or punishment pronounced, which, after all, resulted in her alleged abuser's suspension. Challenges to the results of similar investigations—for example, declarations of innocence from one found culpable or complaints about the punishment imposed—are likely numerous, certainly highly sensitive, and not probative of the issues she actually raises. Moreover, as Defendant explained at the September 25 conference, during the period of Mr. Slifka's employment with Defendant, he has not been a decision-maker in connection with allegations, such as Plaintiff's sexual harassment claims, that could result in suspension or expulsion. Complaints about the outcomes of similar investigations are therefore unlikely to focus on Mr. Slifka.

The Court therefore concludes that Defendant's search and response to Interrogatory 14 and Requests for Production 7 and 15 fulfilled Defendant's discovery obligations as to these requests.

## B. Request for Production 27

Request 27 seeks

> all formal or informal grievances, complaints, or comments regarding ineffectiveness, delay, or confusion about the methods, procedures, or the like, concerning notice and/or complaints of sexual harassment, sexual assault, rape, stalking, or other forms of sex-based discrimination. Such documents include those made by any person to [University] employees likely to have received such information, including the Office of Student Rights and Responsibility, Student Judicial Services, the Dean of Students, [the George Washington University Police Department], and/or other similar sections or departments at [the University], including University Counsel. This request includes any report of or summaries of complaints or feedback, and is not limited to the Relevant Period, but extends from six years prior

to the Relevant Period to present-day. With regard to such submissions as they pertain to Gabriel Slifka's behavior, the time period of this request extends his entire tenure at [the University]. This request includes documents that contain, summarize or refer to grievances, complaints, comments or the like, as well as the grievances, complaints, and comments themselves.[6]

Request 27 at 2. Defendant objects that the request is overbroad both temporally and substantively, and that it solicits irrelevant information. Joint Report I at 13.

Plaintiff submitted this request after negotiations with Defendant about its allegedly insufficient responses to the discovery requests discussed above broke down. Joint Report I at 13. Unlike those requests, which focused on Mr. Slifka and the negligent retention count of the Complaint, Plaintiff contends that this request will gather documents relevant to her claim under Title IX. *Id.* at 13–15. That claim, as outlined above, asserts that Defendant's response to Plaintiff's reports of harassment amounted to "discrimination on the basis of sex" in violation of Title IX because it:

(1) did not refer her to its Title IX coordinator;

(2) did not communicate or follow a clear protocol for her to report sexual harassment;

(3) indicated that George Washington University Police Department was her sole resource for addressing the harassment;

(4) did not follow its own procedures for handling complaints of sexual harassment;

(5) did not allow her to change her university email account to avoid further harassment;

(6) did not enforce its own No Contact Orders;

(7) did not give her adequate notice of the disciplinary hearing against her alleged harasser;

(8) did not inform her in writing of the results of the hearing;

---

[6] According to a meet-and-confer letter, this is a revised version of a request about which Defendant had "concerns." Letter of Yael Bromberg dated Dec. 15, 2016 [Dkt. 39-3 at 26]. The parties did not provide the wording of the original request.

(9) provided her with false information that caused her to delay utilization of other available remedies; and

(10) awarded her alleged harasser a degree after imposing disciplinary measures forbidding the award of such a degree unless he complied with the 2013 No Contact Order.

Compl., ¶¶ 104, 108. Thus, the allegations fix on the allegedly "unreasonable" handling of Plaintiff's claims of harassment. Yet Request 27 asks for *all* complaints about the effectiveness, efficiency, and comprehensibility of Defendant's processes for handling *all* forms of sex-based discrimination. That request is far more expansive than the corresponding Title IX claim. Plaintiff seeks to justify its breadth by asserting that she "has reason to believe a wider institutional issue is present with regard to Title IX violations." Joint Report I at 13–14. Perhaps that it true. But there is no claim relating to any larger concern, such as a pattern and practice of mismanaging sexual harassment investigations. Nor do the allegations actually made admit of the need for comparator evidence. Plaintiff asserts that Defendant responded unreasonably to her report, not that it responded differently to her report than it did to others on the basis of her sex. Compl. at ¶ 104 (alleging that "[r]esponding unreasonably to a student's report of sexual harassment is discrimination on the basis of sex"). Generally, discovery that is "too far removed" from allegations in the operative Complaint is disallowed. *United States v. All Assets Held at Bank Julius Baer & Co.*, 202 F. Supp. 3d 1, 8 (D.D.C. 2016); *see also Food Lion*, 103 F.3d at 1012. That is the case here. Furthermore, this request raises significant privacy concerns, as it sweeps within its ambit other students' complaints of sexual harassment and violence, which would likely trigger FERPA's protections.

Thus, Request 27 as written is markedly overbroad. It seeks information unrelated to the claims Plaintiff has alleged, over a period of time—2004 to the present—that extends well past her tenure as a student at the University. The overbreadth is exacerbated by the use of vague terms,

such as the undefined "comment," which can mean anything from a formal exposition or commentary to a mere remark. *Comment*, OXFORD ENGLISH DICTIONARY, http://www.oed.com/. Finally, responding to this request, which is broader in scope than Interrogatory 14 and Requests for Production 7 and 15, would no doubt cost Defendant at least as much as responding to those requests and would do little to advance this litigation. Defendant need not produce documents in response to this request.

### C.      Redactions in Defendant's Production and Assertion of Privilege

The parties' disagreements regarding the redactions in Defendant's document production were largely resolved on the record in the September 8 hearing. Defendant will produce unredacted versions in accordance with the protective order and the order regarding FERPA procedures entered in this case. The parties will decide without the assistance of the Court how to proceed in the case of individuals whose identities are irrelevant to the issues at stake here.

The redaction in one document, identified as AA0001930–34, remains in dispute. Defendant claims the redacted material is protected by the attorney-client privilege. The Court has reviewed an unredacted version of the document *in camera* and heard, *ex parte*, Defendant's arguments as to the basis for its claim of privilege. The Court finds that the privilege does not attach to the redacted information.

"The attorney-client privilege protects confidential communications between a client and her lawyer that occur for the purpose of giving legal advice, but facts do not become privileged just because they are communicated to or by a lawyer." *Intervet Inc. v. Merial Ltd.*, 256 F.R.D. 229, 232 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981)). The redacted information in question is a purely factual statement communicated by the George Washington University Office of the General Counsel to the George Washington University Police Department. It is

not legal advice and was not communicated for the purpose of procuring or providing legal advice. It is therefore not protected. *See, e.g.*, *United States v. Naegele*, 468 F. Supp. 2d 165, 169 (D.D.C. 2007) ("'[T]he [attorney-client] privilege should protect only the client's communications to the attorney (and so much of the attorney's communications to the client that might tend to reveal a client communication)'—and, of course, the legal advice itself—'and not facts or other information contained in the communication.'" (quoting *In re Ampicillin Antitrust Litig.*, 81 F.R.D. 377, 389 (D.D.C.1978))).

### D.    Rule 30(b)(6) Deposition

Finally, in March 2017, Plaintiff noticed a deposition pursuant to FED. R. CIV. P. 30(b)(6). That rule allows a party to name an organization as a deponent, after which the organization "must . . . designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." FED. R. CIV. P. 30(b)(6). The party noticing the deposition "must describe with reasonable particularity the matters for examination" so that the deponent organization may choose and prepare individuals to testify on its behalf. *Id.*

Plaintiff's initial notice outlined fifty-four subjects for the deposition. Joint Report I at 29. Following an objection the Court sustained in a telephonic discovery conference on April 6, 2017 *id.*, the notice was pared down to ten. Deposition Notice at 27–30. Even so, the amended deposition notice remains significantly overbroad. For example, two of the listed deposition topics seek testimony regarding:

1. Institutional responses to [Plaintiff's alleged harasser's] stalking, harassment, domestic violence, and assault relating to [Plaintiff], including factors and alternative responses considered by [University] employees before reaching its final response. This includes action taken by [the George Washington University] Police Department; internal investigations and reports by [University] employees; meetings held; advice and counseling provided to [Plaintiff] and [her alleged harasser]; disciplinary hearings and the policies, procedures and/or practices implemented at those hearings, on appeal of

those hearings, and as follow-up to those hearings; other disciplinary measures and actions; steps to eliminate recurrence and retaliation; protective actions taken to ensure safety; steps taken to address the effects of the harassment on [Plaintiff's] educational opportunities and emotional wellbeing; specific resources provided by [the University] to [Plaintiff]: and notice provided to [Plaintiff] and [her alleged harasser] of any actions being taken.

3.  [The University's] policies, procedures, practices, and trainings concerning Title IX and student discipline related to harassment, sexual harassment, assault, sexual assault, stalking, domestic violence, sexual violence, intimate partner violence, and dating violence during the Relevant Period; including [the University's] reporting requirements; the creation of the Office of Student Rights and Responsibilities and the discontinuance of Student Judicial Services; compliance with the OCR Resolution Agreement of August 31, 2011; and any change made to [the University's] policies, procedures, practices, internal reporting requirements, and employee trainings during the Relevant Period. This includes the names of Title IX Coordinators, Deputy Coordinators, and Assistant Coordinators during the Relevant Period, their roles and responsibilities, and the nature of their communication with the Office of Student Rights and Responsibilities, Student Judicial Services, and the [George Washington University] Police Department. This further includes the maintenance of the "Duty" listserve . . . and the email address associated with GW Students Against Sexual Assault.

Deposition Notice at 28–29. These topics alone cover an impermissibly broad range of subjects over a significant number of years, making it difficult not only for Defendant to designate and prepare a witness—or identify and prepare multiple witnesses—that could satisfy the "duty of being knowledgeable on the subject matter identified as the area of inquiry," *Myrdal v. D.C.*, 248 F.R.D. 315, 317 (D.D.C. 2008), but also for Plaintiff to abide by the presumptive seven-hour time limit for depositions, *see* FED. R. CIV. P. 30(d)(1). Indeed, these topics essentially require a witness to testify as to every event, communication, policy, practice, training, and response—including rejected responses—that Defendant's employees considered in connection with Plaintiff's claims. *See Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 18–19 (D.D.C. 2004) (rejecting as "absurdly overbroad" wide-ranging 30(b)(6) deposition notice that "reads like an interrogatory or a section of a request for production of documents"); *see also Menuel v. Hertz Corp.*,

No. 1:07-CV-3031, 2009 WL 10665026, at *7 (N.D. Ga. Dec. 9, 2009) (rejecting as overbroad topic that "does not sufficiently limit the scope of the events, discussions, communications, and documents about which the corporate representative is to testify" (internal quotation marks omitted)); *Catt v. Affirmative Ins. Co.*, No. 2:08-CV-243, 2009 WL 1228605, at *6 (N.D. Ind. Apr. 30, 2009) (rejecting 30(b)(6) notice requiring litigant "to identify and prepare a company representative to essentially testify about every act, piece of correspondence, telephone conversation, and electronic journal entry of the underlying claim"). Similarly, topic 10 seeks "[d]etails of each and every complaint and investigation from 2009 through the end of the Relevant Period . . . against [Defendant] for violation of Title IX." Deposition Notice at 29–30. Not only is this subject vastly overbroad, but it suffers from deficiencies analogous to those of Request 27, insofar as it appears unsupported by the claims in the Complaint.

Other topics track almost exactly document requests Plaintiff has propounded. For example, topic 4 requests details of every report of "harassment, sexual harassment, assault, sexual assault, stalking, and/or rape" Plaintiff made to Defendant, as well as communications within the University regarding those reports. Deposition Notice at 29. Topic 8 asks for testimony regarding Mr. Slifka's entire employment history with Defendant. *Id.* To be sure, a party may ask for testimony regarding documents it has received in discovery, but the deposition topics should not merely replow the same field, lest the request be rejected as duplicative or cumulative. *See, e.g.*, *In re Dana Corp.*, 574 F.3d 129, 148–49 (2d Cir. 2009) ("A court plainly has discretion to reject a request for discovery if the evidence sought would be cumulative . . . ."); *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 126 (D.D.C. 2005) (recognizing that Rule 30(b)(6) is "abused" where deposition is "nothing more than duplicative of the discovery already provided"). Plaintiff's Rule 30(b)(6) deposition notice suffers from these defects.

"Rule 30(b)(6) is intended to streamline the discovery process." *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 70 (D.D.C. 1999). It allows a designated agent to speak for an organization on noticed topics on which he has been prepared in order "to curb the bandying by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of the facts that are clearly known to the organization." *Id.* (quoting *Michelman v. Hanil Bank, Ltd. (In re Jee)*, 104 B.R. 289, 294 (Bankr .C.D. Cal.1989)). Thus, it is a useful tool to inquire about, for example, matters within the peculiar knowledge of the receiving corporate entity. *See, e.g.*, *Nicholas v. Wyndham Intern., Inc.*, 373 F.3d 537, 543 (4th Cir. 2004) (affirming district court's order quashing defendant's 30(b)(6) notice where there was no indication that the organization had unique information that had not already been probed in discovery). It is not appropriate, however, to use a 30(b)(6) deposition as a catch-all technique to reexamine at the end of discovery the universe of information an adversary has produced during the discovery period. Here, a deposition on these sweeping topics would intensify the already "time-consuming and inefficient" nature of such depositions, *Tri-State Hosp. Supply*, 226 F.R.D. at 126, so that the burden on Defendant of designating and preparing a witness would almost certainly outweigh the benefit to Plaintiff.

Because most of the noticed topics "suffer from the same or similar problems" as those identified above, the Court will "wipe the slate clean and require the parties to attempt in good faith to arrive at a mutually agreeable listing of topics for the 30(b)(6) depositions that are to be taken and the 30(b)(6) witnesses who will speak to them." *Banks*, 222 F.R.D. at 19. Plaintiff should first revise its 30(b)(6) notice to "insure that the 30(b)(6) depositions are meaningful exer-

cises in ascertaining information that has not been previously discovered or are necessary to ascertain the positions that [Defendant] took or takes as to factual and legal issues that have arisen," *id.*, after which the parties may engage in the meet-and-confer process.

## ORDER

For the reasons stated above, it is hereby

**ORDERED** that Plaintiff's motion to compel Defendant to conduct additional searches in response to Interrogatory 14 and Requests for Production 7 and 15 is **DENIED**; it is further

**ORDERED** that Plaintiff's motion to compel Defendant to conduct additional searches in response to Request for Production 27 is **DENIED**; it is further

**ORDERED** that Defendant will redact its discovery productions in accordance with the protective order and FERPA order entered in this case; it is further

**ORDERED** that Defendant will produce to Plaintiff forthwith an unredacted copy of the document previously produced as AA0001930–34; it is further

**ORDERED** that Plaintiff's motion to compel Defendant to produce one or more individuals to be deposed in response to her Rule 30(b)(6) notice is **DENIED**.

**SO ORDERED**.

Date:  October 12, 2017

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE