UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICCA PRASAD,<br><br>        **Plaintiff**,<br><br>v.<br><br>THE GEORGE WASHINGTON UNIVERSITY,<br><br>        **Defendant**. | Civil Action No.<br>1:15-cv-01779 (ABJ/GMH) |

## MEMORANDUM OPINION AND ORDER

Ricca Prasad ("Plaintiff") was a student at George Washington University ("Defendant" or the "University") between September 2010 and May 2015. She alleges that she suffered sexual abuse and harassment at the hands of another student (known as "V.T.") during that period, and that Defendant failed to meet its responsibilities under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, failed to provide her with promised protections, negligently inflicted emotional distress, and negligently retained one of its employees involved in the University's disciplinary processes.

The matter was referred to the undersigned for the resolution of ongoing discovery disputes. After a prior discovery order that addressed, among other things, the overbreadth of Plaintiff's deposition notice pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, *see Prasad v. George Washington Univ.*, __ F.R.D. __, __ 2017 WL 4570771, at *9–10 (D.D.C. 2017) ("*Prasad I*"), the parties began negotiations to narrow the topics on which Defendant would be deposed. Plaintiff first proposed five topics, which were further winnowed down to three after Plaintiff agreed to withdraw Topics II and V of the draft deposition notice. [Dkt. 54 at 32, 43–47, 59–64]. The parties continued to confer on Topics I, III, and IV and, although they were able to

resolve a number of disputes, they ultimately sought this Court's guidance on two of the remaining topics—Topics III and IV. A telephone hearing was held on March 6, 2018, to address these issues.

> First, Defendant objects to the following underlined language in Topic III:
>
> GW policies, procedures, and practices during the Relevant Period for: <u>lessening disciplinary recommendations and amending imposed sanctions or Administrative General Actions; allowing a disciplined student to walk at graduation</u>; deferring suspensions; <u>removing suspension transcript notations</u>; entering into and amending behavioral agreements; <u>amending persona non grata status</u>; degree revocation; and remedial measures available for disciplining alumni.

[Dkt. 55-1 at 4]. Additionally, Defendant objects to Topic IV in its entirety:

> Policies, procedures, and practices during the Relevant Period related to training on sexual assault, sexual violence, sexual harassment, intimate partner violence, stalking, or other Title IX-related matters of GW employees, including University personnel who personally interact with students on a regular basis and University personnel involved in responding to allegations of sexual harassment.

*Id.* Defendant argues primarily that the challenged subject matter is irrelevant, but also contends that some of it is duplicative of information already received in document discovery and in depositions of fact witnesses previously taken pursuant to Rule 30(b)(1). [Dkt. 54 at 53–56].

### I. LEGAL STANDARD

The topics on which a litigant must produce and prepare a 30(b)(6) deponent to testify are limited by the familiar relevance standard of Rule 26(b)(1) of the Federal Rules of Civil Procedure, which allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *See, e.g.*, *Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 393 (D.N.J. 2011) ("The scope of questioning at a 30(b)(6) deposition is coextensive with Rule 26(b)(1), but the witnesses must be prepared to testify to at least those topics identified in the notice."); *Overseas Private Inv. Corp. v. Mandelbaum*, 185 F.R.D. 67, 68–69 (D.D.C. 1999) (noting that scope of a Rule 30(b)(6) deposition is guided by discovery standard of Rule 26(b)(1)).

Relevance "'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Food Lion, Inc. v. United Food & Commercial Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012 (D.C. Cir. 1997) ("Generally speaking, 'relevance' for discovery purposes is broadly construed."). However, "the relevance standard of Rule 26 is not without bite," and will not allow "explor[ation] [of] matter which does not presently appear germane on the theory that it might conceivably become so." *Food Lion*, 103 F.3d at 1012 (quoting *In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975)). While the initial responsibility of establishing relevance lies with the party seeking the information, "the burden is on the refusing party to show that the movant's request is burdensome, overly broad, vague or outside the scope of discovery." *United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 33 (D.D.C. 2012).

## II.     DISCUSSION

### A.     Topic III

As to the subject matter included in Topic III, each of the sub-topics that Defendant has objected to are relevant and proper subjects for deposition. Among the issues pertinent to Plaintiff's claim of deliberate indifference is whether the University was aware that Plaintiff's alleged harasser was violating disciplinary restrictions imposed on him and nevertheless lessened or vacated those sanctions in contravention of established policies. Defendant argues that these sub-topics are premised on "inaccurate description[s] of the facts" as they have been developed in discovery so far. [Dkt. 54 at 53–54]. However, as discussed at the March 6 Hearing, Plaintiff has adequately shown that there are still factual issues regarding these sub-topics. For example, there

3

is some evidence that the suspension notation on V.T.'s transcript was removed and reinstated, and that the notation was used as a negotiating tactic to encourage V.T. to comply with disciplinary restrictions. *Id.* at 44. There is also evidence that V.T.'s *persona non grata* status that was instituted after a 2012 incident with Plaintiff was lifted and thereafter reimposed after a subsequent incident. *Id.* at 43. This dispute is not the appropriate vehicle in which to determine such factual questions, and Plaintiff has established the relevance of these areas of inquiry.

Two additional issues require discussion. At the hearing, Plaintiff asserted that she sought to expand this topic slightly to inquire as to Defendant's policies regarding allowing a student who had been disciplined or *who had a disciplinary hearing pending* to "walk at graduation." She argues that, although V.T. had not yet had his disciplinary hearing at the time of his graduation, Defendant purposely delayed that hearing until after graduation. *Id.* at 61–62. In fact, V.T.'s disciplinary hearing for an alleged assault against Plaintiff on April 1, 2013, was held on May 21, 2013, three days after graduation. *Id.* at 62. In light of that timeline, Plaintiff may investigate policies and procedures regarding allowing a disciplined student or one with pending discipline to walk at graduation. Defendant also argues that the subtopic related to "lessening disciplinary recommendations and amending imposed sanctions or Administrative General Actions" is overbroad and being used as an improper "catch-all" provision. To the extent that this objection is based on the admonition in *Prasad I* that a Rule 30(b)(6) deposition is not to be used as a "catch-all technique," __ F.R.D. at __, 2017 WL 4570771, at *10, the argument is not well-taken. *Prasad I* was concerned with a vastly overbroad deposition notice that appeared designed to allow Plaintiff "to reexamine at the end of discovery the universe of information [the University had] produced during the discovery period." *Id.* Here, this subtopic is sufficiently targeted to elicit information about policies that might not be keyed to the specific sanctions identified (suspension notices, *persona*

4

*non grata* status, etc.), but rather embody more general guidelines about situations in which disciplinary restrictions may be reduced.

### B. Topic IV

This topic concerns policies, procedures, and practices for training employees on Title IX-related matters. Plaintiff asserts that this testimony is necessary to show that Defendant's employee training related to Title IX was inadequate, that the University's response to her complaints demonstrated deliberate indifference to the harassment she was suffering, and that the University employees who responded to her complaints did so in a manner contrary to Defendant's stated policies, thereby increasing the risk of serious emotional distress to Plaintiff. [Dkt. 55 at 2]. At the hearing, Defendant countered that, to make out a Title IX failure-to-train claim, a plaintiff must show not merely that the training "could have been better," but rather that the training "encouraged the harassing conduct," citing *Doe v. Emerson College*, 271 F. Supp. 3d 337 (D. Mass. 2017), a standard that is allegedly impossible to meet here in light of the current record. Defendant overstates the holding in *Doe*.

There, the court noted that "[a]t least one court has found that a school's liability for failure to train extends only to the situation where a school 'sanctions a specific program that, without proper control, would encourage sexual harassment and abuse such that the need for training or guidance is obvious.'" 271 F. Supp. 3d at 356–57 (quoting *C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1339 (D. Kan. 2008)). However, it then went on to analyze the evidence at issue in the case, and noted the relevant decision-makers had taken "substantive training on issues related to Title IX, including on sexual harassment and student conduct proceedings. Both individuals had also attended a formal training on the implementation of Title IX practices and policies in March 2012, only nine months before [the plaintiff] made her first allegations . . . ." *Id.* at 357. The court

5

concluded on that record that it was not a case "where officials had no training whatsoever, or where the training was obviously or grossly inadequate." *Id.* That is, the court's analysis did not focus on whether the program at issue encouraged harassment, but rather on more conventional issues about the adequacy of training received. The court ultimately found that there was insufficient evidence with which a "reasonable juror could conclude . . . that any inadequacies in training were so deficient that they constituted 'encouragement of the [harassing] conduct,' *or otherwise amounted to deliberate indifference.*" *Id.* (alteration in original) (emphasis added) (quoting *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1177 (10th Cir. 2007)). Thus, the court clearly recognized that encouragement of harassing conduct is not the only way to show deliberate indifference. *Cf. Wells v. Hense*, 235 F. Supp. 3d 1, 8 (D.D.C. 2017) ("Title IX does not require that a defendants' deliberate indifference lead to subsequent actionable harassment. As the First Circuit has recognized, . . . the Supreme Court [has] 'stated that funding recipients may run afoul of Title IX not merely by "caus[ing]" students to undergo harassment but also by "mak[ing] them liable or vulnerable" to it.'" (alterations in original) (quoting *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 172–73 (1st Cir. 2007))); *Doe v. Forest Hills Sch. Dist.*, No. 1:13-CV-428, 2015 WL 9906260, at *17 (W.D. Mich. Mar. 31, 2015) ("The Department of Education has made it clear to school administrators that training and proper responses to sexual assault claims are required. Just like failing to train a police officer on when to use his or her gun, failing to train a school principal on how to investigate sexual assault allegations constitutes deliberate indifference.").

Thus, it does not appear to be the law that Plaintiff must prove that Defendant's Title IX training encouraged her harassment, and, in any case, it would be inappropriate to make that determination in relation to this discovery dispute, which primarily involves whether inquiry into the

University's Title IX training policies "encompasses [a] matter that bears on, or . . . could reasonably lead to other matter that could bear on," a claim or defense. *Oppenheimer Fund*, 437 U.S. at 351. Here, Defendant's employee training policies on Title IX-related matters, including questions about "who attended which presentations, how frequently, and how [the University] tracked attendance at or completion of the various training requirements" [Dkt. 54 at 63], are relevant to Plaintiff's claims.

At the hearing Defendant contended that, even if the topic is relevant, it is duplicative and burdensome because Plaintiff has had the opportunity in depositions pursuant to Rule 30(b)(1) to ask relevant witnesses, including the University's Title IX Coordinator, about the training they received. Plaintiff responds that when these witnesses were asked such questions, they gave inconsistent or incomplete answers.

Again, the Court need not resolve any such factual disputes now. What is clear is that Plaintiff is entitled to take a Rule 30(b)(6) deposition on this topic notwithstanding the fact that she has taken Rule 30(b)(1) depositions of witnesses who had personal knowledge of training policies. As the rules and cases make clear, Rule 30(b)(6) and Rule 30(b)(1) serve different purposes. *See* Fed. R. Civ. P. 30(b)(6) (outlining requirements for deposition of organizational representative and noting use of 30(b)(6) procedure "does not preclude a deposition by any other procedure allowed by these rules")*; see also, e.g.*, *Martin v. Bimbo Foods Bakeries Distribution, LLC*, 313 F.R.D. 1, 8–9 (E.D.N.C. 2016) ("A deposition of a deponent in his individual capacity differs from that of a deponent as a corporate representative."); *Linville v. Xanodyne Pharm., Inc.*, No. CIV-11-1082, 2012 WL 876769, at *1 (W.D. Okla. Mar. 14, 2012) ("Rule 30(b)(6) and Rule 30(b)(1) serve different purposes . . . ."); *Commodity Futures Trading Comm'n v. Midland Rare Coin Exch. Inc.*, No. 97-7422-CIV, 1999 WL 35148749, at *3 (S.D. Fla. July 30, 1999) ("[T]he

depositions serve distinct purposes, impose different obligations on Defendant . . . , and involve different ramifications."). Rule 30(b)(6) requires an organization to identify a person knowledgeable on a noticed topic and to prepare that person to testify as to that topic, thus binding the entity; a Rule 30(b)(1) deposition requires a witness to testify only as to her personal knowledge and does not, generally, bind the entity. *See, e.g.*, *Martin v. Bimbo Foods Bakeries Distribution, LLC*, 313 F.R.D. 1, 8–9 (E.D.N.C. 2016); *Harris v. Koenig*, 271 F.R.D. 356, 368 (D.D.C. 2010). Plaintiff is therefore entitled to take a Rule 30(b)(6) deposition on Topic IV.[1]

### III. CONCLUSION

In March 2017, Plaintiff first noticed a Rule 30(b)(6) deposition of the University, which the Court found overbroad. *Prasad I*, __ F.R.D. at __, 2017 WL 4570771, at *9. When the parties were unable to resolve the issue of the proper scope of the deposition, they brought their dispute to the Court for the second time. *Id.* On October 12, 2017, after another finding of overbreadth, the parties were again ordered to confer as to the scope of that deposition. *Id.* at __, 2017 WL 4570771, at *10. They were similarly unsuccessful and brought the dispute to the Court in March 2018 for the third time. After a year of wrangling, it is time to complete this deposition and—finally—close discovery in this case.

It is therefore

**ORDERED** that Defendant shall designate one or more witnesses to testify as to the three topics in Plaintiff's most recent proposed Rule 30(b)(6) deposition notice [Dkt. 55-1], as discussed above; it is further

---

[1] Defendant has generally refused Plaintiff's request that it designate certain testimony from Rule 30(b)(1) depositions as 30(b)(6) testimony. [Dkt. 54 at 55]. In light of this Memorandum Opinion—and to alleviate the burden that Defendant claims the Rule 30(b)(6) deposition will impose, *id.* at 56—the parties may choose to revisit that question.

**ORDERED** that the parties shall promptly confer in order to schedule the deposition(s) expeditiously.

**SO ORDERED**.

Date: March 8, 2018

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE